In re Jay NEWLIN and Carol T. Newlin.

Civ. A. No. 82-1052.

United States District Court,
E.D. Pennsylvania.

April 19, 1983.

S. Martin Teel, Jr., Atty., Richard L. Switzer, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for appellant.

Jack K. Miller, Mitchell W. Miller, Philadelphia, Pa., for appellees.

MEMORANDUM and ORDER

SHAPIRO, District Judge.

The Internal Revenue Service ("IRS") has appealed an Order of the bankruptcy court holding it in contempt, fining it and assessing attorneys' fees against it. It challenges the authority of the bankruptcy court to issue such an Order against a government agency.

On February 2, 1981 Jay and Carol Newlin filed a petition under Chapter 13 of the Bankruptcy Code with the bankruptcy court for the Eastern District of Pennsylvania. Subsequently, on May 8, 1981, the debtors filed a "Proof of Claim" which indicated a priority tax claim in the amount of $1,620 on behalf of the United States. The IRS filed its own tax claim against the debtors on July 31, 1981. It stated that the debtors actually owed $2,048.41 in unpaid taxes and that $429.64 was assessed against

them on July 6, 1981. The government now admits that this tax claim against the debtors was in error since the $429.64 was assessed after the debtors' bankruptcy petition and was contrary to the automatic stay imposed by 11 U.S.C. § 362(a)(6). Government's Brief at 4. It now admits the debtors owed only $1,651.76 in unpaid tax liabilities. *Id.*

On August 14, 1981, debtors filed an "Application to Expunge Claim, to Hold Creditor in Contempt and to Assess Counsel Fees." The debtors contended the IRS should be held in contempt for violating the § 362 automatic stay. This "application" was served upon the government by mailing it to the IRS Special Procedures Section. The government states in its brief that tax division counsel believed the application was "in the nature of an objection to a proof of claim" and required no answer. Government's Brief at 3. However, the government, on September 18, 1981, filed a request for an extension of time to respond. On September 30, 1981, the bankruptcy court authorized an extension of time and directed the IRS to answer or otherwise respond by October 9, 1981. The IRS had not filed an answer when a hearing was held on the matter on October 19, 1981. For this reason, the bankruptcy judge granted the debtors' application, expunged the IRS liability and held the IRS in contempt.[1]

The government's motion for reconsideration was denied on January 6, 1982 and the IRS ordered to pay a $250 fine to the Clerk of the Bankruptcy Court for the Eastern District of Pennsylvania for contempt and to pay $250 to debtors' counsel for attorneys' fees. *See,* Record of Appeal, Document # 5.

The United States appeals from the order finding it in contempt and assessing attorneys' fees pursuant to 28 U.S.C. § 1408.[2] It argues that the bankruptcy court did not have the power to impose a contempt citation and fine upon an agency of the government and that there was no basis in fact for a contempt citation. It also claims an award of attorneys' fees is improper because such an award is barred by sovereign immunity and attorneys' fees are only appropriate in adversary proceedings which this was not.

The general power of a bankruptcy court to issue sanctions was claimed under 11 U.S.C. § 105(a): "[t]he bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." That this provision granted the bankruptcy courts the power to issue sanctions for contempt was generally recognized prior to *Northern Pipeline Company v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *In re Norton,* Civil Action No. 82–0990 (E.D.Pa. Oct. 25, 1981); *In re Mullen,* 14 B.R. 39, 40 (D.C. S.D.Ohio 1981). At times it was considered necessary for a bankruptcy court, as any other, to issue a contempt citation in order to enforce the Bankruptcy Act. *Cf., Ex Parte Robinson,* 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1874); *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531,

---

1. The government believes "[i]t is unclear whether the Internal Revenue Service has been held in contempt for failing to answer the debtors' 'Application . . .' or for violating the provisions of 11 U.S.C. § 362." Government's Brief at 6. The bankruptcy judge did not state a reason but the debtors asked that the IRS be held in contempt because it violated the § 362 automatic stay. The bankruptcy judge granted this request as a default judgment because the IRS failed to file an answer. Therefore, the reason the IRS was held in contempt was its violation of the § 362 automatic stay.

2. This statute was not to have become effective until April 1, 1984 but under the 1978 Bankruptcy Act during the transition period appeals may be taken from Bankruptcy Courts "to the district court for the district in which the bankruptcy judge sits." P.L. 95–598, Title IV, November 6, 1978; 92 Stat. 2549 § 405(c)(1)(C). Under the United States District Court for the Eastern District of Pennsylvania Rule effective December 29, 1982, as amended, courts of bankruptcy and procedure in bankruptcy continued to be governed by Title IV of P.L. 95–598 as amended and by the bankruptcy rules to the extent such title and Rules are not inconsistent with the holding in *Northern Pipeline v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

1535, 16 L.Ed.2d 622 (1966). But its powers differed with regard to issuing civil or criminal sanctions to deal with contempt. Therefore, to determine whether the contempt citation was valid when imposed, this court must determine whether this was civil or criminal contempt.

To make this determination "the most significant variables are the purpose and character of the sanctions that are imposed against the contemnor." *Latrobe Steel Company v. United Steelworkers,* 545 F.2d 1336, 1343 (3d Cir.1976). The bankruptcy judge did not explicitly state the type of contempt for which the sanction was imposed but it is plain that the sanction imposed on the IRS was for *criminal* contempt. The basic difference between civil and criminal contempt is that the purpose of civil contempt is *remedial,* to compensate an injured party or coerce compliance with a court order, while criminal contempt is punitive, to vindicate the authority of the court; unlike civil contempt sanctions, a criminal contempt sanction does not terminate upon compliance with a court order. *In Re Stewart,* 571 F.2d 958, 963 (5th Cir. 1978); *Latrobe, supra; United States v. Asay,* 614 F.2d 655, 659 (9th Cir.1980). As the Court of Appeals stated in *Latrobe,*

> The purpose of criminal contempt is to vindicate the authority of the court. Criminal contempt seeks to punish past acts of disobedience . . . . [T]he penalties arising out of adjudication of criminal contempt are generally an absolute fine of a specific amount or a determinate period of confinement. On the other hand, the objective of a civil contempt decree is to benefit the complainant.

545 F.2d at 1343 (footnotes omitted).

■ The remedy imposed in this case was a criminal contempt penalty for two reasons. First, the IRS was being punished for a "past act of disobedience"—violating the § 362 automatic stay by filing a tax claim against the debtors. The Supreme Court, in a leading case, held "[r]efusal to do an act commanded is civil contempt, while doing a forbidden act is criminal contempt." *Gompers v. Buck's Stove & Range Compa-*

*ny,* 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911), *accord, Shillitani, supra.* Violating the automatic stay is clearly in the latter category. Second, the sanction imposed on the IRS (a $250 fine) was punitive not compensatory or remedial. The fine was not compensatory or remedial since it was not to be paid to the debtors but rather to the Clerk of the bankruptcy court. The fine could not benefit the debtors in any way. The appropriate remedial action, to expunge the claims against the debtors, was already taken without the contempt sanction. Furthermore, the $250 fine was an irrevocable penalty, unlike a civil contempt sanction which terminates when the contemnor complies with the court order. "Punishment for criminal contempt is unconditional while the judgment for civil contempt is conditional in nature and can be terminated if the contemnor purges himself of the contempt." *Gompers, supra* at 444, 31 S.Ct. at 499, *accord, Shillitani, supra* 384 U.S. at 370–71, 86 S.Ct. at 1535–36.

The power of a bankruptcy court to find a party in *criminal* contempt is circumscribed. After April 1, 1984, 28 U.S.C. § 1481 (West Supp.1982) which was to govern states: "A bankruptcy court . . . may not . . . punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment." Under the 1978 Bankruptcy Act during the transition (from October 1, 1979 to April 1, 1984) a similar provision applied. The bankruptcy courts were to have no jurisdiction to conduct "a proceeding to punish a criminal contempt not committed in the bankruptcy judge's actual presence." Pub.L. 95–598, Title IV § 405(a)(1)(B)(i); Nov. 6, 1978, 92 Stat. 2686. The IRS filing of a tax claim against the debtors would not have occurred in the bankruptcy judge's "actual presence." *E.g., Campbell v. Gerace,* 13 B.R. 575 (Bkrtcy.Ct. Ohio).

■ Moreover, conduct must be *willful* to be punishable as criminal contempt. *Com. of Pa. v. L.U. 542 International Union of Op. Engineers,* 552 F.2d 498, 510 (3d Cir.), *cert. denied,* 434 U.S. 822, 98 S.Ct. 67, 54

L.Ed.2d 79 (1977). The bankruptcy judge made no finding that the IRS willfully violated the automatic stay. The government claims that its filing of the proof of claim was merely an inadvertent mistake—a computer error.[3] Government's Brief at 10–11. There is no evidence on the record to contradict this claim. Therefore, a criminal contempt sanction was not supported by the evidence of record in this case.[4]

But even if criminal contempt were ordinarily appropriate, it was an agency of the United States government (the Internal Revenue Service) that was held in contempt.[5] Issues of sovereign immunity, therefore, are implicated. The doctrine of sovereign immunity means that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed.

1058 (1941), *accord, United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969), *accord, Mitchell, supra.*

■ The House Report states with regard to 11 U.S.C. § 105(a): "[w]ith respect to stays issued under other powers on the application of the automatic stay, to governmental actions, this section and other sections mentioned are intended to be an express waiver of sovereign immunity of the federal government." H.R.Rep. 95–595, 95th Cong., 2d Session 342, *reprinted in* 1978 U.S.Code Cong. & Adm.News 5787, 6299. But the only section of the 1978 Bankruptcy Act that expressly waives sovereign immunity, 11 U.S.C. § 106, is a limited waiver. Under § 106(a) if a "governmental unit"[6] files a claim against a debt-

---

**3.** Collier on Bankruptcy argues that "where violation of the stay is inadvertent contempt is not an appropriate remedy." 2 *Collier on Bankruptcy,* ¶ 362.11.

**4.** Throughout this discussion we have made reference to the 1978 Bankruptcy Act. Some jurisdiction granted to the bankruptcy courts in § 241(a) of that Act was declared unconstitutional in *Northern Pipeline, supra,* but the decision applies *prospectively.* The plurality opinion of four Justices stated:

> ... retroactive application would not further the operation of our holding, and would surely visit substantial injustice and hardship upon those litigants who relied upon the Act's vesting of jurisdiction in the bankruptcy courts. We hold, therefore, that our decision today shall apply only prospectively.

—— U.S. at ——, 102 S.Ct. at 2880, 73 L.Ed.2d at 626. Justices Rehnquist and O'Connor, in concurring in the result, stated the decision had no retroactive effect. *Id.* —— U.S. at ——, 102 S.Ct. at 2882, 73 L.Ed.2d at 628. Therefore, a majority of the court (six Justices) agreed with this. The *Northern Pipeline* case was decided on June 28, 1982. The bankruptcy judge issued his final order holding the IRS in contempt in January, 1982. Therefore, *Northern Pipeline* does not affect the validity of his Order.

The plurality opinion found the Act's grant of jurisdiction in all matters related to cases under Title 11 unconstitutional. But the concurring justices limited their holding to the unconstitutionality of bankruptcy court jurisdiction in the immediate controversy arising out of state law

which is therefore the effective limitation of the decision. This controversy arises out of the restructuring of debtor-creditor relations, adjudication and discharge in bankruptcy, at the core of the federal bankruptcy power.

If the holding in *Northern Pipeline* were applicable retrospectively, at least the Court plurality would find that bankruptcy judges could not constitutionally exercise these contempt powers. Bankruptcy judges (1) do not have life tenure and (2) their pay can be reduced by Congress; therefore, they cannot be considered Article III judges and cannot exercise Article III judicial powers ("the essential attributes of judicial power," *Id.* —— U.S. at ——, 102 S.Ct. at 2874, 73 L.Ed.2d at 619). Bankruptcy judges, the opinion stated, unconstitutionally exercise the essential attributes of judicial power because, "bankruptcy courts exercise all ordinary powers of district courts including ... the power to issue any orders, process or judgment appropriate for the enforcement of the provisions of Title 11, 11 U.S.C. § 105(a)." *Id.* —— U.S. at ——, 102 S.Ct. at 2879, 73 L.Ed.2d at 624. Thus, the contempt power is the very type of power the plurality stated Article I bankruptcy courts may not exercise.

**5.** No opinion is expressed on whether individual government employees might not be held in contempt of court.

**6.** "Governmental unit" includes an agency of the United States. 11 U.S.C. § 101(21).

or's estate (as the IRS did here in July, 1981), the government waives immunity, but only with respect to compulsory counterclaims, as defined in the Federal Rules of Civil Procedure (that is, counterclaims arising out of the same transaction or occurrence). The debtor may also offset against the allowed claim of the governmental unit, up to the amount of the government's claim, without regard to whether the debtor's claim arose out of the same transaction or occurrence as the government's claim. S.Rep. 95–989 95th Cong., 2d Session 29–30, *reprinted in* 1978 U.S.Code Cong. & Adm. News 5815–5816. However, § 106(c)(2) states "[e]xcept as provided in subsections (a) and (b) of this section and notwithstanding an assertion of sovereign immunity ... (2) a determination by the courts of an issue arising under such a provision binds governmental units." Congressman Edwards stated, "[e]xcept as provided in sections 106(a) and (b), subsection (c) is not limited to those issues, but permits the bankruptcy court to bind governmental units on other matters as well." 1978 U.S.Code Cong. & Adm. News 6440. But neither this section nor any other waives sovereign immunity with respect to criminal contempt citations. Waiver of sovereign immunity ust be express and cannot be implied.

There is little case law on this issue. Several bankruptcy courts prior to the *Northern Pipeline* decision have held that bankruptcy judges have the power to hold government agencies in contempt. *See, In re Devall,* 16 B.R. 604, 1981 Bank.Law Report, CCH ¶ 68,544 at 80,367 (Bkrtcy.Ct.M. D.Ala.1981); *Mealey v. IRS,* 16 B.R. 800, Bank.Law Reports, CCH ¶ 66,560 at 80,367 (Bkrtcy.Ct.E.D.Pa.1982). However, these opinions are not binding on this court. The only district court decision on point [7] is *In re Norton, supra.* In *Norton,* after the debtors filed for bankruptcy under Chapter 13 of the bankruptcy code, but before their plan for adjustment of debts was approved by the bankruptcy court, the debtors filed a tax return for 1980 showing that a tax refund of more than $2,000 was due. The

IRS refunded all but $737 because that was the amount of tax liability for a previous year. After the debtors' plan was confirmed by the bankruptcy court, the debtors filed a motion in that court to require the IRS to release $737 to them. The bankruptcy court ruled that the IRS' retention of that sum violated the automatic stay of 11 U.S.C. § 362(a)(7). For this violation the bankruptcy judge held the IRS in contempt and fined it $150; on appeal of the IRS, the bankruptcy court's order was affirmed. The bankruptcy court had "found as a matter of fact that at the time of the IRS' action, the IRS was aware of the debtors' bankruptcy, and thus it was aware of the automatic stay." In view of this finding of wilfulness, the court did not consider the statutory limitations on the power to impose criminal contempt sanctions. But in *Norton* the IRS refused to give the debtors money *after* the debtors' plan was confirmed; here the debtors' plan had not yet been confirmed by the bankruptcy court when the IRS filed its tax claim against the debtors.

■ A criminal contempt citation by a bankruptcy court against a government agency is a violation of sovereign immunity. The government has not expressly waived its immunity as sovereign from citation for criminal contempt. Such a contempt citation is illogical if not pointless. One branch of the government of the United States, the bankruptcy court, is "fining" another branch, the IRS. The money from the fine stays within the federal fisc and its inter se transfer accomplishes nothing for the public good. Criminal contempt is to vindicate the authority of the government; this is not accomplished by the government's punishing itself by the assertion of power of the bankruptcy court over the IRS. The bankruptcy court's power to punish for contempt and the IRS' authority to act stem from the same source, the government of the United States. *See, Green v. United States,* 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958).

7. The district court in *In Re Mullon,* 14 B.R. 39 (D.C.E.D.Ohio 1981), in dictum, stated the

bankruptcy court had the power to hold the Air Force in contempt.

The remedies for excesses of IRS conduct rest with the Congress. A criminal contempt citation against the government in this instance would violate its sovereign immunity.

■■■ The only remaining issue is whether the bankruptcy judge had authority to assess counsel fees against the government. Again, sovereign immunity concerns are implicated. Attorneys' fees may be awarded against the United States only if such an award is clearly and expressly provided by statute. *Fenton v. Federal Insurance Administrator,* 633 F.2d 1119, 1122 (5th Cir.1981); *NAACP v. Civiletti,* 609 F.2d 514, 516 (D.C.Cir.1979), *cert. denied,* 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1980); *see, Alyeska Pipeline Service Company v. The Wilderness Society,* 421 U.S. 240, 267–68, 95 S.Ct. 1612, 1626, 44 L.Ed.2d 141 (1975). As a waiver of sovereign immunity, such statutory authorization for the award of attorneys' fees against the government must be strictly construed. *Bronstein v. Philadelphia Fair Housing Commission,* 488 F.Supp. 1357, 1366 (E.D. Pa.1980). Title 28 U.S.C.A. § 2412(b) (West Supp.1982) provides:

Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys ... to the prevailing party in any civil action brought by or against the United States acting in his or her official capacity in any court having jurisdiction of such action.

The government argues that since bankruptcy courts were not to become "courts of the United States until April 1, 1984, under 28 U.S.C.A. § 451 (West Supp.1982), and its amendment by P.L. 95–598, Title II, § 213, 92 Stat. 2661, they could not award attorneys' fees against the government until that date. However, the force of this argument is lessened by the statutory provision to have been effective during the transition (from September 30, 1979 to March 31, 1984) which provided: "[e]ach of the courts of bankruptcy ... shall constitute a separate department of the district court that is such court of bankruptcy under the Bankruptcy Act." P.L. 95–598, Title IV,

§ 404(a). As "departments of the district court" bankruptcy courts fall within 28 U.S.C. § 2412. *See also,* Rule, effective December 29, 1982, as amended, United States District Court for the Eastern District of Pennsylvania.

Under § 2412 attorneys' fees can only be awarded with regard to adversary proceedings. The government claims that the debtors' application was merely an objection to a proof of claim and did not involve an adversary proceeding under Rule 306 of the Rules of Bankruptcy Procedure. Rule 306 states, however, that "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 701, the proceeding is an adversary proceeding. Rule 701 provides:

The Rules of this Part VII govern any proceeding instituted by a party before a bankruptcy judge to (1) recover money or property, other than a proceeding under Rule 220 or Rule 604, (2) determine the validity, priority, or extent of a lien or other interest in property, (3) sell property free of a lien or other interest for which the holder can be compelled to take a money satisfaction, (4) object to or revoke a discharge, (5) obtain an injunction, (6) obtain relief from a stay as provided in Rule 401 or 601, or (7) determine the dischargeability of a debt. Such a proceeding shall be known as an adversary proceeding.

The demand for relief in debtors' application can be construed to fall with either subsections (1) or (2) of Rule 701 so that there was an adversary proceeding. The proceeding in the bankruptcy court was clearly adversarial in substance. During two hearings before the bankruptcy judge the debtors and the IRS were both represented by counsel who engaged in oral argument of their respective positions. *See,* Record of Appeal at documents 15 and 16. Both in substance and form these were adversary proceedings covered by § 2412.

■■■ The bankruptcy judge assessed an attorneys' fee because the IRS violated the automatic stay by withholding a tax liability claim against debtors. The debtors were

forced to incur legal expenses in order to assert their rights under 11 U.S.C. § 362. In cases not involving the government, creditors have been ordered to compensate the debtors their attorneys' fees upon violation of the 11 U.S.C. § 362 automatic stay. *Borg-Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1309 (11th Cir.1982); *In re Demp,* Civil Action No. 83–0251 (E.D.Pa. March 31, 1983). As compensation for an act of civil contempt the violation of the automatic stay need not be willful for the sanction of attorneys' fees to apply. *Demp, supra.*

Since the debtors' application was covered by 28 U.S.C. § 2412 and the circumstances of this case warranted an award, the bankruptcy judge had the authority to assess attorneys' fees against the IRS unless the court found that the position of the United States was substantially justified or that special circumstances make an award unjust. An opposite conclusion would mean the government could engage in dilatory tactics and ignore court orders in a bankruptcy proceeding dilatory tactics and ignore court orders in a bankruptcy proceeding without regard to the legal expenses imposed on the opposing party. The bankruptcy judge determined on the oral application of the prevailing party that the conduct of the government was not justified, no circumstances existed making the award unjust and an attorneys' fee in the amount of $250 was fair based on his personal knowledge of the time expended by debtors' counsel. The government contested the power to grant attorneys' fees not that the amount was improper or excessive. We cannot say that such an award was either unreasonable or an abuse of discretion.

To summarize, the criminal contempt sanction against the IRS was beyond the power of the bankruptcy court. Fining the IRS was contrary to the immunity of the sovereign. However, the bankruptcy judge had the authority to award attorneys' fees to the debtors. Therefore, the order of the bankruptcy court holding the IRS in contempt and fining it $250 is reversed. The order assessing attorneys' fees in the amount of $250 against the IRS is affirmed.

An Order affirming in part and reversing in part follows.