**In re Nancy Yvonne CONTI, f/k/a Nancy Yvonne Zepernick, Debtor.**

**Bankruptcy No. 83–01217–R.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

July 23, 1984.

James R. Sheeran, Richmond, Va., for debtor.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court upon the filing of an objection to a proof of claim filed by the Internal Revenue Service (IRS) and upon a motion for civil contempt against the IRS for violation of the automatic stay imposed by 11 U.S.C. § 362(a). The Court held a hearing on the debtor's objection and motion and after considering the memoranda of law submitted by the parties and the evidence presented at said hearing, this Court makes the following findings of fact and conclusions of law.

### STATEMENT OF FACTS

In November, 1979 the debtor, Nancy Yvonne Conti, was married to Gerald Conti. The debtor is now and has been estranged from her husband since April, 1982. Prior to that marriage, the debtor had been a widow for 3½ years. By her first marriage, the debtor had two children who are now adults. Prior to her first husband's death, the debtor obtained employment and after his death with the income earned from that employment and from social security death benefits for her children she owned and maintained a residence in Chesterfield County, Virginia. After her first husband's death and prior to the marriage to Gerald Conti, the debtor was able to make mortgage payments, purchase and pay for an automobile, support her children and otherwise be self-supporting.

After the debtor was married to Gerald Conti she sold her home in Chesterfield County and used the equity that she had in that home as a down payment in the home she acquired as tenants in common with her new husband, Gerald Conti. Mr. and Mrs. Conti opened an account at the lender secured by this new residence in which was deposited the social security checks received monthly for the benefit of her children. The lender then drafted this account monthly to pay the regular mortgage payment.

The Contis kept all their other finances separate and apart throughout their marriage. With rare exception the debtor paid all utility bills, purchased all food for the family, purchased clothing for herself and her children, as well as other personal expenditures all from the debtor's separate earnings. The couple never maintained a joint checking or savings account. Gerald Conti did not disclose his income to his wife, the debtor, but did always inquire of the debtor as to the amount of her income

and the time at which it would be paid. Often the debtor would give some of her income to help her husband with some of his expenses. The couple never took a vacation during their marriage and Gerald Conti gave his wife no gifts of significant value. In addition, the automobile which the debtor owned at the time of her marriage to Gerald Conti was sold by Gerald Conti who took the entire proceeds and used them for his own purposes.

In 1980 Gerald Conti purchased a one-half ownership interest in Virginia Fitness Centers, Inc. His $15,000 cash investment in his corporation was obtained in part by borrowing funds from a bank with the loan secured by the residence purchased by Mr. and Mrs. Conti. The other portion of the cash investment was obtained by an unsecured loan from a different bank.

After Gerald Conti acquired an interest in Virginia Fitness Center's, Inc., the debtor resigned her prior employment and went to work for her husband's corporation as a manager of one of the fitness centers. She worked 12 to 15 hours a day, 6 days a week, for approximately 6 months. For her efforts she received a salary of $1,000.00 monthly and left employment with the corporation in October of 1980 because her efforts were neither appreciated nor well-rewarded. At that time she went to work for the company in which she is presently employed. The debtor was never an officer, director or shareholder in Virginia Fitness Centers, Inc. and was not a welcome guest the few times she visited the corporation's offices. Sometime in 1982 Gerald Conti disposed of his ownership interest in Virginia Fitness Centers, Inc.

In addition to any reported income, Gerald Conti received from Virginia Fitness Centers, Inc. dividends in the amount of $42,956.49 during 1980. Similarly, he received $15,499.30 from the corporation in 1981. Gerald Conti's accountant testified that the payments of these funds were originally to be structured and treated as loans to Mr. Conti, however, the IRS has determined that the transfers constitute dividend income. The amount of the dividends from Virginia Fitness Centers, Inc., paid to Gerald Conti during 1980 and 1981 were not reported as income on the Conti's joint income tax returns for 1980 and 1981. It is those dividends that the IRS is treating as unreported income that serves the basis for the deficiency the IRS alleges that the debtor now owes and is subject to this litigation. Mr. Duke, their accountant, testified that he had no recollection of any conversation prior to the fall of 1983 with Mrs. Conti relative to the withdrawal of these funds from the corporation. This is apparently contradictory to a statement contained in Defendant's Exhibit # 1 which indicated that Mrs. Conti was aware of a repayment of a loan by the corporation to Mr. Conti and his partner. If she was aware of the transaction, it is obvious she misunderstood the transaction because, in fact, it was a loan by the corporation to the two owners and not a loan repayment.

The income received by the debtor from her employment prior to working for Virginia Fitness Centers, Inc., for her employment with the corporation, and for her employment after working with the corporation was all reported on the appropriate income tax returns. The Contis' joint income tax return in 1980 reported adjusted gross income of $22,167.06. Their return in 1981 reported adjusted gross income of $36,881.27.

The Contis' joint tax returns for 1980 and 1981 were prepared by an accountant from information supplied to him by Gerald Conti. The debtor testified that she signed the returns outside the accountant's presence without benefit of explanation and without reading the returns. In December, 1982 the IRS audited the 1980 and 1981 returns. At that time, the debtor learned for the first time that her husband had dividend income from Virginia Fitness Centers, Inc. that should have been reported on the 1980 and 1981 joint federal income tax returns.

The debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on August 3, 1983. She scheduled the IRS as a creditor to whom was owed $1,446.94 for

an unpaid 1977 income tax liability. The IRS received actual notice of the debtor's bankruptcy filing. Nonetheless on November 14, 1983, the IRS served a notice of levy upon the debtor's employer in order to collect upon the 1977 income tax liability. On January 31, 1984 the debtor filed on behalf of the IRS a proof of claim for the 1977 income tax along with the amount being claimed by the IRS as due by the debtor for unpaid taxes, interest and penalties from the unreported dividend income in 1980 and 1981.[1] On February 1, 1984 the debtor filed an objection to said proof of claim and a motion to find the IRS in contempt for violation of the automatic stay in serving notice of levy upon the debtor's employer for a pre-petition obligation after receiving notice of the debtor's bankruptcy filing.

## CONCLUSIONS OF LAW

The debtor has objected to the IRS's claim arguing that the obligation for which a notice of deficiency was served upon the debtor is not one for which the debtor is liable. As a general rule, liability for tax, interest and penalties due with respect to a joint return is joint and several. 26 U.S.C. § 6013(d)(3). However, pursuant to 26 U.S.C. § 6013(e) the Internal Revenue Code grants relief to certain spouses from such liability for income omitted from the joint return if that spouse can meet certain requirements. This statute commonly known as the "innocent spouse" exception, provides specifically as follows:

(1) In general.—Under regulations prescribed by the Secretary, if—

(A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return,

(B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and

(C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.

26 U.S.C. § 6013(e). All three requirements must be satisfied for the debtor to qualify for this "innocent spouse" exception. *Ratana v. Commissioner,* 662 F.2d 220, 224 (4th Cir.1981). Moreover, the debtor has the burden of proving that she meets each requirement. *Allen v. Commissioner,* 514 F.2d 908, 912 (5th Cir.1975).

The Contis' joint income tax return for calendar 1980 reported gross income of $22,167.06. The amount of the dividends paid to Gerald Conti during the 1980 tax year were in the amount of $42,956.49. The Contis' 1981 joint federal income tax return reported gross income of $36,881.27 and the amount of the dividends paid to Gerald Conti but unreported during the 1981 tax year was $15,499.30. Pursuant to 26 U.S.C. § 6501(e)(1)(A) this Court finds that the omission of the dividend income is attributable to Gerald Conti ("the other spouse") and exceeds 25% of the gross income shown on the relevant return. *See* 26 U.S.C. § 6013(e)(1)(A). Moreover, the IRS does not contest either the fact that the omission was attributable to Gerald Conti and not the debtor or that the omission exceeds 25% of the gross income shown on the relevant return.

---

1. The IRS was notified that the debtor had filed a proof of claim on behalf of the IRS and that pursuant to Bankruptcy Rule 3004 that the IRS could file their own proof of claim which would thereby supersede the claim filed by the debtor. The IRS did not so file a proof of claim on their own behalf.

The second requirement that the debtor must satisfy is that she did not know and had no reason to know of the omitted income. The Court readily agrees with the IRS's contention that it is not a justifiable excuse that the debtor did not read the returns before she signed them. However, the debtor does not seek to relieve herself of tax liability merely for failing to review the return, rather the requirement is that the debtor did not know of and had no reason to know of the omitted income. The court in *Terzian v. Commissioner*, 72 T.C. 1164 (1979), permitted a wife § 6013(e) relief where she admitted signing the federal joint returns without reading them. This Court will not preclude application of the innocent spouse exception solely due to the debtor signing the returns.

From the evidence before the Court it appears clear that the financial lives of the debtor and her husband, Gerald Conti, were completely separate and apart. Gerald Conti never disclosed the nature or amount of his income to his wife, did not contribute to her financial well-being or to her standard of living. Moreover, he did not maintain the mortgage payment, utility bills, or general household needs of the family. In fact he often requested and received from the debtor some of her income to help him with his expenses. With these facts in mind, if the debtor had noted the amount of her husband's income disclosed on the tax return it would not be unreasonable for her to assume that her husband had no other income other than that reported.

The only troublesome fact before the Court is that Gerald Conti throughout most of the relevant period drove a number of luxurious automobiles including an Austin-Healy, two Jaguars, a Ferrari, a Mercedes-Benz, and a Cadillac Seville. Although driving such automobiles might suggest that her husband was making more income than reported on the returns, it would not be unreasonable for the debtor to assume that her husband could make monthly payments on such automobiles because she had no reason to believe he had other expenses for which he was responsible. *Cf. Mysse v. Commissioner*, 57 T.C. 680 (1972)

(where court found wife did not have reason to know because expenses could have been reasonably met from regular sources of income).

Finally, although the debtor was an employee of Virginia Fitness Centers, Inc. she was never an officer, director, or shareholder of the corporation. She never was involved with the books or management of the corporation, nor had any knowledge of the corporation's financial affairs. In fact, she was not welcome at the corporation's headquarters. Other than her paycheck during the time of her employment with the corporation, she never received, saw, or negotiated a check drawn on the corporation's account. With these observations in mind, this Court is of the opinion that the debtor has sufficiently established that she did not know of and had no reason to know of the omitted income in the form of dividends paid to Gerald Conti during 1980 and 1981.

The third aspect of the innocent spouse exception is whether under all the facts and circumstances it would be inequitable to hold the debtor liable for the tax deficiency. *Treas.Reg.* § 1.6013–5(b). A major factor or circumstance contemplated by the Code is whether the debtor significantly benefited either directly or indirectly from the income omitted from the gross income reported on the return in question. From the evidence before the Court it appears that the debtor enjoyed no benefit from the omitted income. The facts are that Gerald Conti did not contribute to any of the mortgage or household expenses and never gave to the debtor any of his income in the form of gifts or otherwise. The only benefit that the debtor arguably received was the occasional use of certain luxurious automobiles that may have been financed, in part, by the omitted income. However, this benefit, if any, was insignificant particularly in light of the fact that the automobile that was previously owned and paid for by the debtor was sold by Gerald Conti with the proceeds being used for his own benefit. This Court is left with the clear impression that the debtor was much worse

off financially after marrying and living with Gerald Conti than she was before that relationship commenced.

It would be inequitable to hold that the occasional benefit of using the luxury automobiles would be sufficient to find that the debtor significantly benefited from the omitted income. Other courts have given "innocent spouses" relief even where they found that a spouse benefited from omitted items of income because they ruled that despite the benefit tax imposition was inequitable. *See, e.g., Busse v. U.S.*, 542 F.2d 421 (7th Cir.1976). In those cases the spouse seeking exception received far more tangible benefit than the debtor in the instant matter. In *Mysse v. Commissioner*, the spouse seeking exception was a housewife and the court did not consider ordinary support by her husband sufficient to deny the exception. Similarly, in *Terzian v. Commissioner*, the court applied the innocent spouse exception, finding no significant benefit despite receiving a lump-sum divorce settlement of $155,000 from her spouse who omitted items of income from their joint returns. The facts in the instant matter make clear that imposition of the tax on the debtor would be inequitable. Consequently, this Court is satisfied that the debtor has also carried her burden in proving that she did not significantly benefit from the income omitted from the 1980 and 1981 income tax returns. Alternatively, if the benefit she may have received can be considered "significant" the facts of this case require that regardless of such benefit, imposition of the tax would be clearly inequitable.

Having satisfactorily established each of the three requirements of 26 U.S.C. § 6013(e), this Court holds that the debtor in the instant matter falls within the "innocent spouse" exception and, therefore, is relieved from liability for tax, interest, and penalties on the income omitted from the joint returns of the debtor and her husband, Gerald Conti in 1980 and 1981 and to that extent this Court will sustain the debtor's objection to the proof of claim filed by the debtor for the IRS.

The second matter also before the Court is whether the IRS should be held in civil contempt of this Court for its alleged violation of 11 U.S.C. § 362(a). On August 8, 1983 the debtor filed a petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. On November 14, 1983 the IRS levied upon the debtor's wages to collect on a delinquency owed the government by the debtor for 1977 income taxes. When informed on November 21, 1983 by the debtor's attorney that the debtor had filed bankruptcy the IRS on that same day released its levy on the debtor's wages.

Based upon the evidence before the Court it appears that the IRS due to clerical error, inadvertently violated the automatic stay provisions of 11 U.S.C. § 362(a) when it instituted a levy upon the debtor's wages after the debtor had filed for bankruptcy. The IRS does not deny that it received timely notice of the debtor's petition in bankruptcy. The automatic stay is an important provision enacted to further the policies behind the Bankruptcy Code that classes of creditors be treated equally and that the debtor be given a temporary respite from creditor actions against debtor's person or property. *See* House Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977); Senate Rep. No. 95–989, 95th Cong., 2d Sess. 49 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Due to the importance of the automatic stay to adequate debtor relief in bankruptcy, courts should encourage the enforcement of the stay and punish violations thereof.[2]

■ Although the IRS's violation was inadvertent it was a violation nonetheless. Unless some extenuating circumstances exist, the conduct may have been contemptuous and a private individual or corporation would be appropriately punished for such contempt. However, the Court is clearly precluded from holding any party in criminal contempt where the objectional behavior was outside the Court's presence. *See*

**2.** The automatic stay remains in effect unless relief is granted after request, or until the debtor receives a discharge or the case is closed or dismissed. See 11 U.S.C. § 362(c).

28 U.S.C. § 1481; Bankr.R.Proc. 9020 and the "Emergency Rule" as adopted by the District Court of the Eastern District of Virginia. In addition, the clear evidence is that the IRS's violation was inadvertent, therefore, their conduct cannot be found to be wilful, and because they immediately released the lien when notified this Court is of the opinion that the IRS should not be held in contempt but may, however, be liable to the debtor for reasonable attorney's fees.

■ Although the Court declines to hold the IRS in contempt, it may nonetheless be liable for reasonable attorney's fees incurred by the debtor in enforcing her rights under the Bankruptcy Code. The IRS argues that sovereign immunity also bars any award of attorney's fees. However, the statutory authorization for the award of attorney's fees is an express waiver, although limited, of sovereign immunity. Title 28 of the United States Code, § 2412(b) provides:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys ... to the prevailing party in any civil action brought by or against the United States acting in his or her official capacity in any court having jurisdiction of such action.

*Id.*[3] The bankruptcy court has jurisdiction over violations of the automatic stay. In filing bankruptcy the debtor obtained certain rights under 11 U.S.C. §. 362, one of which was to be protected from harassment by pre-petition creditors. The IRS was such a pre-petition creditor that ignored the automatic stay and levied upon the debtor's wages. Thus, the government clearly violated rights that Congress had given to the debtor. To incur legal expenses to enforce rights given to her under the Bankruptcy Code and not to compensate her for them would be inequitable. As stated by the Court in *In re Newlin*, 29

B.R. 781 (Bankr.E.D.Pa.1983), "an opposite conclusion would mean the government could engage in dilatory tactics and ignore court orders in a bankruptcy proceeding without regard to the legal expenses imposed on the opposing party." *Id.* at 787. It does not appear that the action by the IRS was substantially justified or that special circumstances make an award of attorney's fees unjust. *Cf. In re Norton*, 32 B.R. 698, 700 (E.D.Pa.1982) (where District Court rejected IRS claim that sovereign immunity barred civil contempt for violation of stay).

It appears from the evidence and the pleadings filed in this matter that because of the IRS's violation of the automatic stay, counsel for the debtor was required, at a minimum, to 1) inform the debtor, his client, of her rights pursuant to 11 U.S.C. § 362; 2) telephone the appropriate revenue officer and inform him that the debtor had filed bankruptcy; 3) file a motion for civil contempt to enforce the debtor's rights; 4) appear at a hearing on a motion for civil contempt; and 5) file a brief in support of the motion as requested by the Court. The pleadings and briefs filed relevant to the motion for civil contempt were combined in the same pleadings filed by the debtor objecting to the claim of the IRS. The large majority of the hearing held on these two matters, as well as most of the legal argument in these matters, was on the innocent spouse exception. Little of the debtor's counsel's work appears to have been on the motion for civil contempt. With these observations in mind, this Court can find that the debtor's counsel could have reasonably spent approximately two hours of effort due to the IRS's violation of the automatic stay. For these services, this Court will make an award to the debtor of $150.00 as reimbursement for attorney's fees incurred due to the violation,

---

**3.** The IRS has argued that 26 U.S.C. § 7430 should apply to the instant matter and thereby relieve the IRS of any liability for violation of the automatic stay. An examination of that code section reveals that it is intended to protect the IRS with regard to unauthorized disclosures of tax returns and return information. Nothing in the statute suggests that it would apply to violations of § 362 of Title 11 of the United States Code or that it was enacted to modify a litigant's rights pursuant to 28 U.S.C. § 2412(b).

although inadvertent, of the automatic stay by the IRS.