In re SLAW CONSTRUCTION CORP. (Successor to Slaw-Landis Paving Co., Inc.), Debtor.

SLAW CONSTRUCTION CORPORATION, Plaintiff,

v.

HUGHES FOULKROD CONSTRUCTION COMPANY and Home Insurance Company *, Defendants.

Bankruptcy No. 80–00759G.
Adv. No. 81–0345G.

United States Bankruptcy Court, E. D. Pennsylvania.

Feb. 18, 1982.

---

* Although the complaint does not hyphenate Hughes-Foulkrod, that name is hyphenated in the answer filed by Hughes-Foulkrod. Therefore, in this opinion we will use hyphen as that is the correct spelling.

Thomas C. Sadler, Jr., Butz, Hudders & Tallman, Allentown, Pa., for debtor/plaintiff, Slaw Const. Co.

Lawrence J. Tabas, William J. Barker, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for defendants, Hughes Foulkrod Const. Co. and Home Ins. Co.

Donald M. Harrison, Philadelphia, Pa., for Creditors' Committee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The instant case is before us on the preliminary issue of whether the defendant's counterclaim against the debtor in the above captioned adversary proceeding should be dismissed because the debtor's plan of reorganization has already been confirmed and the defendant, a creditor of the debtor, is bound by the terms of that plan. We conclude that the counterclaim should not be dismissed because (1) that claim may be entitled to payment under the plan as an administrative expense, (2) even if that claim is not an administrative expense or provided for by the plan it may not be discharged if it is based on an executory contract which is not affected by the plan and (3) if the claim is a discharged debt, it may nonetheless be asserted as a setoff or defense to the debtor's complaint at least to the extent that that complaint is based on a prepetition transaction.

The facts of this case are briefly:[1] Slaw Construction Corporation ("the debtor") filed a petition for a reorganization under chapter 11 of the Bankruptcy Code ("the Code") on April 11, 1980. On April 8, 1981, the debtor filed a complaint against Hughes-Foulkrod Construction Company ("Hughes-Foulkrod") and Home Insurance Company ("Home") seeking money allegedly due pursuant to a contract entered into by the debtor and Hughes-Foulkrod on January 24, 1979.[2] In its answer, Hughes-Foulkrod asserted a counterclaim against the debtor for damages allegedly caused by the debtor in connection with the performance of that contract.

Thereafter, the debtor filed a motion for partial summary judgment against Hughes-Foulkrod asserting that, because the debtor's plan of reorganization had been confirmed,[3] Hughes-Foulkrod is bound by the terms of that plan and may not now assert a claim against the debtor. The debtor's argument is based on § 1141 of the Code which provides, in relevant part:

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor or equity security holder of, or general partner in, the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired un-

---

1. The facts upon which we rely in this opinion are not in dispute.

2. Home is the surety for the performance of that contract under certain contract bonds.

3. The debtor's plan was confirmed on August 4, 1981. Hughes-Foulkrod did not file a proof of claim or object to the confirmation of that plan. In addition, the debtor did not list Hughes-Foulkrod as a creditor in its schedules.

der the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) After confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, of equity security holders, and of general partners in the debtor, except as otherwise provided in the plan or in the order confirming the plan.

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

In response to the motion for partial summary judgment, Hughes-Foulkrod asserts that its counterclaim should not be dismissed for three reasons. The first is that its counterclaim is, Hughes-Foulkrod contends, an administrative claim entitled to be paid in full according to the terms of the debtor's plan and the Code.[4] Hughes-Foulkrod bases that contention on its assertion that the contract in question was an executory one which had been assumed by the debtor after the date it filed its petition for a reorganization. Consequently, Hughes-

Foulkrod argues that, to the extent its counterclaim for damages is based on that contract, it is entitled to payment as an administrative expense.

■ We conclude that Hughes-Foulkrod may be able to establish that it is entitled to payment of its counterclaim as an administrative expense and that, therefore, the debtor's motion for partial summary judgment should not be granted at this time. If, as Hughes-Foulkrod maintains, its counterclaim is due as a result of the debtor's assumption of an executory contract, then it would be entitled to priority status as an administrative claim. *See* 2 Collier on Bankruptcy ¶ 365.03 (15th ed. 1981). Furthermore, if the contract was an executory one, the debtor could not assume it under the Code without providing for the curing of any defaults thereunder and without accepting liability for any and all of its terms. *See* 11 U.S.C. § 365(b)(1).

In addition, the fact that Hughes-Foulkrod did not file a proof of claim or an application for allowance of its claim may not be fatal.[5] Hughes-Foulkrod asserts that, although the debtor was aware of the claim of Hughes-Foulkrod by virtue of the filing of its (Hughes-Foulkrod) counterclaim, the debtor failed to amend its schedule or plan to include that claim. As a result, Hughes-Foulkrod contends that it did not receive any notice of the necessity to file an application for allowance of its claim or of the date of the hearing on the confirmation of the debtor's plan. There is authority that, in such circumstances, the creditor should be given the opportunity to file and prove its claim, even though the bar date has passed. *See, e.g., In re Harbor Tank Storage Co., Inc.*, 385 F.2d 111 (3rd Cir. 1967).

■ Furthermore, Hughes-Foulkrod has asserted that there are equitable grounds which require that its claim be allowed and

---

**4.** Article I of the debtor's plan provides:

All costs and expenses of administration as defined in the Bankruptcy Code for which application for or allowance or a claim is filed prior to confirmation of this plan as

allowed, approved and ordered paid by the Court shall be paid in full at confirmation. *See also*, 11 U.S.C. §§ 507(a)(1) & 1123(a)(1).

**5.** *See* Note 4, *supra.*

paid under the debtor's plan as an administrative expense. This assertion is based on Hughes-Foulkrod's contention that, if the debtor did not intend to pay the Hughes-Foulkrod claim as a cost of administration, then the confirmation of its plan is tainted with bad faith. This is so because the debtor failed to notify the court, in connection with the confirmation of its plan, that Hughes-Foulkrod had filed a counterclaim in a pending adversary proceeding which claim might be entitled to priority status as an administrative expense. We agree that such equitable considerations may be grounds for permitting the late filing and payment of the Hughes-Foulkrod claim. *Cf. In re Harbor Tank, supra.* For the above reasons, we conclude that there may be grounds which would entitle Hughes-Foulkrod to payment of its claim as an administrative expense and that, consequently, the debtor's motion for summary judgment on Hughes-Foulkrod's counterclaim should not be granted at this time. Even if we did not so hold, we conclude that the second reason given by Hughes-Foulkrod in opposition to the debtor's motion for partial summary judgment also militates against granting that motion.

The second ground asserted by Hughes-Foulkrod for denying the debtor's motion for partial summary judgment is that, if its claim was not provided for by the debtor's plan, then it is not discharged. In this respect, Collier states that:

> On the other hand, if the [executory] contract is not affected by the plan, it rides through the proceedings having neither been assumed nor rejected and will thereafter be binding on the debtor. The discharge of section 1141(c) will not assist the debtor since, absent rejection, the other party to the contract will not be a creditor.

2 Collier on Bankruptcy ¶ 365.03[1] at 365–22 (15th ed. 1981). Based on the above, we conclude that if the claim of Hughes-Foulkrod was one based on an executory contract which was not affected by the debtor's plan, then the claim would not be discharged and the debtor's motion for partial summary judgment, which is based on the assumption that the claim was discharged, should be denied.

■ The third reason asserted by Hughes-Foulkrod for denial of the debtor's motion for partial summary judgment is that, even if the claim of Hughes-Foulkrod is not entitled to be paid as an administrative claim under the debtor's plan and even if that claim is discharged by the confirmation of that plan, Hughes-Foulkrod may nonetheless assert that claim as a defense to the action brought against it by the debtor. It is true that under § 14(f) of the Bankruptcy Act, a creditor could assert a discharged debt as a setoff or defense to an action brought by the debtor against that creditor.[6] *See, e.g., Riggs v. GEFCO*, 623 F.2d 68 (9th Cir. 1980); *United States v. Brunner*, 282 F.2d 535 (10th Cir. 1960); *Binnick v. Avco Financial Services*, 435 F.Supp. 359 (D.Neb.1977); *In re Progressive Wallpaper Corp.*, 240 F. 807 (N.D.N.Y.1917). However, it has recently been held that the Code changed this by providing, in § 524(a)(2), that

> (a) A discharge in a case under this title—
>
> (a) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover *or offset any such debt* as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2) (emphasis added). *See In re Johnson*, 13 B.R. 185, 7 B.C.D. 1292 (Bkrtcy.M.D.Tenn., 1981). The bankruptcy court in *Johnson* stated that its reading of § 524(a)(2), to prohibit the setoff of a discharged debt against a post-petition judgment, was not inconsistent with the setoff provisions of § 553 of the Code:

> The setoff provisions of § 533(a) [sic], like its predecessor in the old Act, permit

---

**6.** Section 14(f) of the Act stated in relevant part:

>  f. An order of discharge shall—
>    (2) enjoin all creditors whose debts are discharged from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt.

11 U.S.C. § 32(f) (repealed 1978).

a creditor to offset a prepetition debt owed the debtor against a claim against the *bankruptcy estate.* They do not allow a prepetition creditor to offset a claim against the *debtor* that has been discharged against a post-petition liability to the debtor, *regardless of whether the cause of action may have arisen prior to bankruptcy.*

13 B.R. at 189 (emphasis added). We disagree. If the court in *Johnson* were correct in its interpretation of § 553, then a debtor could prevent a creditor from effecting a setoff by waiting to file suit on a prepetition transaction until after he had filed a petition for relief. We conclude that the proper interpretation of § 553 is that it allows the setoff of mutual debts both of which arose before bankruptcy, regardless of when suit thereon is instituted. This would, thus, allow a creditor to raise a discharged debt as a defense to an action brought by the debtor, regardless of when that action is instituted, if that action is based on a claim or cause of action which arose before bankruptcy. Although this would seem to be inconsistent with the language of § 524(a)(2) which prohibits the use of a discharged debt as a setoff, § 553(a) of the Code states that the right of setoff is preserved notwithstanding any other section of the Code except for certain limited exceptions.[7]

Therefore, in this case, we conclude that, even if its counterclaim is a debt which has been discharged by the confirmation of the debtor's plan, Hughes-Foulkrod may nevertheless assert that counterclaim as a setoff or defense to the debtor's complaint to the extent that that complaint is based on a transaction which occurred before the filing of its petition for a reorganization. In light of all of the above, we conclude that the debtor's motion for partial summary judgment should be denied and that Hughes-Foulkrod should be permitted to prove its counterclaim as well as its entitlement to

payment of that counterclaim, if it can, at the trial of this proceeding.

---

7. Section 553(a) provides in relevant part:
    (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before

the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case except to the extent that. . . .