**In re Nancy Yvonne CONTI, f/k/a Nancy Yvonne Zepernick, Debtor.**

**Bankruptcy No. 83–01217–R.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

June 4, 1985.

James R. Sheeran, Esq., Richmond, Va., for debtor.

Sarah Hunt, Tax Div., U.S. Dept. of Justice, Washington, D.C., Robert W. Jaspen, Asst. U.S. Atty., Richmond, Va., for I.R.S.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court on the motion of the debtor, Nancy Yvonne Conti ("Conti"), for a finding of civil contempt against the Internal Revenue Service ("IRS") for violation of the injunction contained in 11 U.S.C. § 524 which prohibits the commencement or continuation of any action to collect a discharged debt. A hearing on the debtor's motion was held on December 14, 1984 at which time the Court heard the evidence of the parties. At the conclusion of the hearing the Court requested briefs on the issues in the case. Upon review and consideration of the evidence and briefs submitted in this matter the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The motion for finding of civil contempt currently before the Court is the second such motion filed by the debtor against the IRS in this case. The prior motion filed February 1, 1984 was grounded in a violation by the IRS of the stay imposed by 11 U.S.C. § 362 in an attempt by the IRS to collect upon a 1977 income tax liability owed by the debtor. In that case, the IRS had served a notice of levy on November 14, 1983 upon the debtor's employer in violation of the automatic stay. On November 21, 1983, when informed by the debtor's attorney that the debtor had filed bankruptcy, the IRS released its levy on the debtor's wages the same day. Inasmuch as the evidence in the first case pointed to an inadvertent violation of the automatic stay due to a clerical error by the IRS, and further because of the IRS's prompt release of its levy upon notification that the debtor had filed bankruptcy, this Court found that the IRS should not be held in contempt but would, however, be liable to the debtor for reasonable attor-

ney's fees. *See In re Conti*, 42 B.R. 122, 128 (Bankr.E.D.Va.1984) (hereinafter referred to as *"Conti I"*).

The debtor's current motion for finding of civil contempt against the IRS involves the injunction provisions of 11 U.S.C. § 524(a)(2) [1] rather than the automatic stay provisions of § 362. The debtor also requests $1,000,000 in punitive damages for the alleged violation. The parties do not dispute that the automatic injunction of § 524(a)(2) arises upon the discharge of those pre-petition debts dischargeable in bankruptcy. In this case, the debtor received her discharge in her Chapter 7 case on January 31, 1984.

The evidence at the hearing proved that on June 6, 1984, the IRS mailed a "past due notice" to the debtor.[2] (See Plaintiff's Exhibit 3). An attachment to the notice indicated that the debtor had a tax liability of $1,527.98 for the period ending December 13, 1977. The notice informed the debtor that enforcement action would be taken if the 1977 tax liability was not satisfied within seven days of the date of the notice. The IRS concedes that the past due notice was sent to the debtor on June 6, 1984, that this was post-discharge, and that the debtor's tax obligation for 1977 is dischargeable and was discharged except to the extent of any setoff which it maintains it is properly entitled to effect.

Mrs. Conti testified at the hearing that she simultaneously filed her 1982 and 1983 federal income tax returns on April 6, 1984. On June 11, 1984, the debtor was notified by the IRS that she was due a refund of $1,775 for the tax year ending December 31, 1982. However, because of a tax liabili-

ty for 1983, the IRS notified the debtor that $1,230.39 of her 1982 refund was being applied to the 1983 tax liability leaving $544.61 to be refunded to the debtor. The debtor has never received the $544.61 and the IRS concedes that it is holding the said amount for the purpose of setoff against the 1977 tax liability.

Ms. Conti filed her no-asset Chapter 7 bankruptcy petition on August 3, 1983. As a result, her 1977 income tax liability is a pre-petition debt. Due to the age of the tax liability for 1977, the debtor has maintained that her unpaid 1977 income taxes, penalties, and interest were discharged on January 31, 1984, and, thus, further collection activity by the IRS was enjoined.

The IRS produced evidence at the hearing attempting to explain why the past due notice was mailed to the debtor on June 6, 1984. The testimony of Tom Daughtry from the Special Procedures Function, Collection Division, in the Richmond District Office of the IRS indicated that in June, 1984, the IRS was not reviewing each individual no-asset Chapter 7 case for dischargeable taxes due to (1) the overwhelming numbers of these cases, (2) the IRS manpower shortage, and (3) the fact that in the experience of the IRS a majority of no-asset Chapter 7 cases had no dischargeable taxes. Mr. Daughtry also testified that on the filing of a bankruptcy petition a freeze code (Code 520) is put into the IRS computer to bar collection activity during the pendency of the automatic stay of § 362, but that upon discharge, a new code is placed in the computer to lift the freeze (Code 521) and the case is then referred to

---

**1.** The Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, amended the language of 11 U.S.C. § 524(a)(2) in some technical respects. However, the amendments were effective only as to cases filed 90 days after the date of enactment, *viz.,* 90 days from July 10, 1984. The debtor's petition in this case was filed prior to that time on August 3, 1983. Accordingly, the language of § 524(a)(2) applicable to this case is that which existed prior to the amendments as follows:

    11 U.S.C. § 524(a)(2). Effect of discharge.

    (a) A discharge in a case under this title—

    (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived.

**2.** Although the notice was actually mailed to "Nancy Y. Zepernick" which was Ms. Conti's previous married name, this has not been asserted by the IRS in support of its position that a finding of civil contempt is inappropriate in this case.

the appropriate IRS Service Center for determination of whether further collection activity is appropriate.

Based on the foregoing findings of fact, the issues presented to the Court are (1) whether the IRS action in sending the June 6, 1984 past due notice to the debtor demanding full payment of the 1977 tax liability was contemptuous in light of the injunction against collection of discharged debts contained in 11 U.S.C. § 524; and (2) whether the debtor's entitlement to a refund for 1982 can be set off post-discharge against the debtor's 1977 tax liability; and if not, whether the IRS action in retaining the debtor's refund in contemplation of a setoff was contemptuous.

## CONCLUSIONS OF LAW

The debtor received her discharge on January 31, 1984. Pursuant to 11 U.S.C. § 523(a)(1)(A), that discharge order would not affect any tax obligation of a kind and for the period specified in § 507(a)(7). The latter section gives priority to the unsecured claims of governmental units for taxes if a return was due, including extensions, three years or less before the date of the filing of the petition. In the case at bar, the debtor's 1977 tax return was due April 15, 1978 which is more than three years before the date of the filing of the petition and, therefore, is neither a § 507(a)(7) priority claim nor is the debtor's 1977 tax liability nondischargeable pursuant to § 523(a)(1).

Having established that the debtor's 1977 tax liability was subject to discharge, the debtor maintains that § 524(a)(2) enjoins the IRS from the commencement or continuation of any action "to collect, recover or offset any such debt as a personal liability of the debtor" once the discharge has been granted. In this regard, the debtor asks this Court to conclude that the IRS letter of June 6, 1984 was an action to collect this discharged debt as a personal liability of the debtor, and thus make a finding that civil contempt is appropriate.[3]

The IRS maintains (1) that there has been no contemptuous conduct upon which the Court could base a finding of civil contempt in this case, (2) that the Court lacks jurisdiction to impose criminal contempt sanctions,[4] and (3) that sovereign immunity bars holding the United States in contempt. With respect to the issue of whether sovereign immunity bars a finding of civil contempt against the United States, this Court reads 11 U.S.C. § 106(c) to be an express waiver of sovereign immunity with respect to any provision of Title 11 which contains the term "creditor," "entity," or "governmental unit," or is obviously implied therefrom. Although the automatic stay of § 362 refers to "all entities" and this term is not so used in § 524, it is inconceivable to this Court that a creditor, entity, or governmental unit would not be bound by § 524 because it was not specifically mentioned. Rather, the intent of § 524 is to apply to all collection efforts by any creditor, and, thus, any determination made by this Court arising under § 524 is binding on the IRS. In the case of *In re Burrow*, 36 B.R. 960 (Bankr.D.Utah 1984), the bankruptcy court held that the doctrine of sovereign immunity did not insulate the Internal Revenue Service from being held in civil contempt for violation of the automatic stay of § 362.

This Court finds that to the extent prepetition taxes are subject to being discharged because a return was due more than three years from the date of filing the petition, the debtor's discharge would be meaningless if this Court could not enforce the injunction provisions of § 524 against the Internal Revenue Service should it violate, intentionally or unintentionally, those provisions. As a result, this Court holds that the IRS may be held in civil contempt for violation of § 524(a)(2) as a necessary

---

**3.** In addition, the debtor contends that any offset by the IRS of her 1977 tax liability with a tax refund due her for 1982 is also proscribed by § 524(a)(2). This issue is discussed *infra* at pp. 147–150.

**4.** The issue of criminal contempt is not an issue in this case inasmuch as the debtor has brought a motion for a finding of civil contempt.

and obvious implication of the express waiver of sovereign immunity contained in § 106(c). In addition, the discharge order entered by this Court on January 31, 1984 specifically enjoins "all creditors" from collection efforts with respect to the debts dischargeable by that order. Finally, this Court held in *Conti I* that the doctrine of sovereign immunity did not bar the award of attorney's fees pursuant to 28 U.S.C. § 2412(b). *Conti I*, 42 B.R. at 128.

■ The IRS also argues that there has been no contemptuous conduct and civil contempt cannot be imposed in this case due to the fact that such a remedy can lie only where there is a refusal to do an act commanded by the Court. The IRS cites *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911). However, the IRS misconstrues the nature of civil contempt. The IRS would seek to import into the law of civil contempt an element of wilfulness by maintaining that civil contempt lies only where there is a *refusal* to do an act commanded by the Court. The United States Supreme Court has held in *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949) that:

> [t]he absence of wilfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. [citations omitted.] Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act.

*Id.* at 191, 69 S.Ct. at 499; *see also In re Burrow*, 36 B.R. at 965; *In re Lohnes*, 26 B.R. 593, 596 (Bankr.D.Conn.1983); *In re Worthing*, 24 B.R. 774, 777 (Bankr.D.Conn. 1982). In this case, the debtor's discharge entered January 31, 1984 is the Court order which enjoins all creditors from commencing or continuing any action to collect, recover, or offset any debt discharged by that order.

■ The IRS contends that civil contempt is not proper in this case inasmuch

as the IRS's former policy of not examining no-asset Chapter 7 cases for dischargeable tax debts has now been changed. While this subsequent remedial measure may be considered as going towards the good faith of the IRS, the fact remains that the IRS was aware, or is charged with awareness, that some taxes in no-asset Chapter 7 cases would be discharged due to the age of the tax liability. The Court finds that impracticality, lack of manpower, and lack of appropriate procedures is not a sustainable defense to a motion for a finding of civil contempt. While the Court found in *Conti I* that the notice of levy issued by the IRS against the debtor had been inadvertent and immediately corrected, and therefore in exercising its discretion the Court found that civil contempt would be inappropriate, the Court in this proceeding does not find the same type of good faith mistake here with respect to the mailing of the past due notice on June 6, 1984 which demanded payment in full of a discharged tax liability. The IRS is not privileged to ignore the dischargeability of certain taxes because of the burden or inconvenience which it may cause. Nor is the IRS privileged to ignore the order of this Court entered January 31, 1984 enjoining any action to collect discharged debts. Accordingly, this Court finds the IRS in civil contempt for mailing to the debtor on June 6, 1984 a past due notice demanding payment in full of a 1977 pre-petition tax liability discharged in bankruptcy. This action was in violation of this Court's order entered January 31, 1984 and was accomplished with full knowledge by the IRS that its procedures with regard to no-asset Chapter 7 cases did not distinguish between dischargeable and nondischargeable tax liabilities and that the possibility existed that its procedures would inevitably result in attempts to collect discharged tax debts.

■ In fashioning the appropriate remedy for this contempt, the Court is entitled to assess the damages caused by a violation of the order. The Supreme Court in *McComb* stated that:

[w]e have no doubts concerning the power of the District Court to order respondents, in order to purge themselves of contempt, to pay the damages caused by their violations of the decree.... We are dealing here with the power of a court to grant the relief that is necessary to effect compliance with its decree. The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief.

*McComb,* 336 U.S. at 193, 69 S.Ct. at 500. The court in *Burrow* stated that "[h]aving found a civil contempt, the court may award compensation to the debtors. Actual loss measures compensatory fines for civil contempt.... Attorney's fees may be a part of the compensation." *Burrow,* 36 B.R. at 966.

In *Conti I,* this Court considered what efforts were required of debtor's counsel in order to vindicate the debtor's rights. *Conti I,* 42 B.R. at 128. The Court finds here that similar efforts were required, including (1) informing the debtor of her rights pursuant to 11 U.S.C. § 524(a)(2); (2) informing the IRS that the debtor's taxes had been discharged in bankruptcy on January 31, 1984; (3) filing a motion for civil contempt to enforce the debtor's rights; (4) appearance at a hearing on a motion for civil contempt; (5) filing a brief in support of the motion as requested by the Court. Although in *Conti I* a large majority of the hearing and argument was on a matter unrelated to the civil contempt, in the instant case there are no other issues other than that of civil contempt arising out of the notice and the intention to setoff.

Thus, rather than an award of $150.00 as reimbursement for attorney's fees awarded in *Conti I,* this Court makes an award of $750.00 as reimbursement for attorney's fees for the violation by the IRS of the injunction of this Court's order of January 31, 1984 and the violation of 11 U.S.C. § 524(a)(2). In this Court's opinion, this amount fully compensates the debtor for her actual loss and gives the debtor her full remedial relief. Accordingly, the Court denies the debtor's motion for $1,000,000 in punitive damages as being outside the scope of civil contempt remedies under the decision in *McComb.* Finally, as this Court noted in *Conti I,* an award of attorney's fees is entirely appropriate in cases such as this irrespective of an actual finding of civil contempt pursuant to 28 U.S.C. § 2412(b). The argument of the IRS that IRC § 7430 should apply to this matter is not well taken in light of the fact that the latter section is intended to "protect the IRS with regard to unauthorized disclosures of tax returns and return information." *Conti I,* 42 B.R. at 128 n. 3.

It remains to be determined whether the retention by the IRS of the debtor's refund of $544.61 for purposes of setoff is contemptuous in light of § 524(a)(2)'s injunction against any act to offset a pre-petition debt. For the reasons which follow, however, this Court finds that the IRS is entitled to offset the $544.61 owed to the debtor against the debtor's otherwise discharged 1977 tax liability.

■ The right to setoff in bankruptcy cases is governed by 11 U.S.C. § 553.[5] The

---

5. § 553. Setoff.

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6) or 365(h)(1) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the

setoff provisions of the Code protect the ability of creditor and debtor to offset a mutual debt provided that the mutuality existed pre-petition. The Code requires the offsetting mutual debts to have arisen prior to the commencement of the case. *Id.* Thus, if one debt should arise after the commencement of a case, there is no mutuality and the setoff rights pursuant to § 553 do not exist.

The debtor in this case maintains that there is no mutuality between the 1977 tax liability owed by Mrs. Conti to the IRS and the refund of $544.61 owed to Mrs. Conti by the IRS. The thrust of the debtor's argument against mutuality is that because the debtor did not choose to file her 1982 tax return claiming a tax refund until April 6, 1984, the IRS was under no obligation to make such a refund until that time; therefore, as a matter of law the claim was one which did not arise before the commencement of the debtor's case on August 3, 1983. The debtor cites IRC § 6407 (1982) for the proposition that the allowance of a refund and, thus, the date the obligation arose for purposes of § 553 is the date on which "the Secretary or his delegate first authorizes the scheduling of an overassessment in respect of any internal revenue tax." *Id.* The debtor contends that the act of scheduling did not occur until the debtor filed her tax return for the tax year 1982. In this case, the 1982 tax return of the debtor was filed on April 6, 1984. Scheduling by the Secretary would have taken place sometime after this date making the date the obligation arose sometime after the petition was filed and, therefore, not a pre-petition debt for which mutuality would exist. Therefore, the debtor concludes that

the IRS cannot offset the remainder of her tax refund against her 1977 tax liability.

This Court cannot agree with the debtor's argument or conclusion. The date of allowance of a tax refund pursuant to § 6407 is not the same as the date the obligation arose for purposes of § 553 of the Bankruptcy Code. This Court finds that the obligation of the IRS to the debtor arose as of December 31, 1982, the end of the debtor's tax year, subject only to the debtor's filing a tax return claiming the refund within the time limitations prescribed by IRC § 6511(a) (1982). The latter section is a procedural requirement which, if not followed, will prohibit the Secretary from allowing a refund pursuant to § 6407 and will extinguish the right to a refund in all cases if not so followed. However, this does not change the fact that an obligation to the debtor arose as of December 31, 1982. As of that date, the debtor need only follow the proper procedures to claim her refund. Accordingly, this Court concludes that § 6407 does not govern the date the obligation arose for purposes of the setoff provisions of the Bankruptcy Code, and that December 31, 1982 is the date by which mutuality is to be established on the claim from the Internal Revenue Service to the debtor.

Having concluded from the foregoing that the obligation from the Internal Revenue Service to the debtor for a tax refund arose on December 31, 1982 prior to the time the debtor filed her petition in bankruptcy, and further that the debtor's tax obligation to the IRS for the calendar year 1977 arose on December 31, 1977, the Court finds that the requisite mutuality exists between the two debts to satisfy the § 553 requirement of mutuality. As it ap-

debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

(c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

pears that none of the exceptions to setoff contained in § 553 are applicable in this case, the Court sees no reason why the two debts cannot be setoff, *unless* the debt owed by the debtor to the IRS for 1977 taxes was extinguished by the discharge order of this Court on January 31, 1984.

The question in this regard is whether a creditor who otherwise meets the requirements for a setoff pursuant to § 553 is prohibited from exercising its right to setoff because of extinguishment of the debtor's obligation to the creditor as a result of discharge. It is well-settled that the automatic stay prohibits the exercise of the right of setoff but does not destroy the right to setoff itself. *See In re Handy,* 41 B.R. 172 (Bankr.E.D.Va.1984); *Kenney's Franchise Corp. v. Central Fidelity Bank N.A., Lynchburg,* 22 B.R. 747, 748 (Bankr. W.D.Va.1982); *In re Terry,* 7 B.R. 880, 882 (Bankr.E.D.Va.1980). Courts have allowed a creditor to seek relief from stay in order to exercise setoff rights prior to discharge. *United States v. Norton,* 717 F.2d 767, 773 (3d Cir.1983); *United States v. Powers,* 28 B.R. 86 (Bankr.E.D.Pa.1983). However, nothing in the Code or in the case law would indicate that discharge would bar a creditor from exercising a right to setoff which existed at the time of filing the petition. *See Handy,* 41 B.R. at 174. To hold otherwise would mean that if a creditor failed to file for relief from stay or failed to have its relief from stay granted prior to discharge, its right to setoff would be lost. In addition, to follow this line of reasoning would mean precluding a third party who stands as both debtor and creditor of the bankrupt from effecting a setoff upon demand by the trustee in bankruptcy for the balance of the debt due to the debtor, which demand may be made after the debtor has received his discharge.

This Court finds that the injunction of § 524(a)(2) which enjoins creditors from offsetting any debt which has been discharged refers only to the setoff of a post-petition debt owed by a creditor to the debtor which the creditor would then seek to setoff against a pre-petition discharged debt owed by the debtor to the creditor. This Court finds that § 524(a)(2) is not meant to extinguish the right to setoff which is preserved in § 553 of the Code, and thus the Court disapproves of the debtor's conclusion that the setoff here cannot be achieved post-discharge. *See In re Slaw Construction Corp.,* 17 B.R. 744, 747–48 (Bankr.E.D.Pa.1982). Moreover, this Court has previously decided in *Handy* that there would appear to be no reason why a setoff should not be allowed in circumstances such as these inasmuch as neither the Code nor the Rules of Bankruptcy Procedure provide a timetable by which setoff must be accomplished. *Id.* at 174. In *Handy,* the debtor had received his discharge in bankruptcy prior to the setoff. This Court went on to hold that "[t]here appears to be nothing precluding a setoff after a case had been closed." *Id.*

In summary, the requisite mutuality exists between the two debts to allow the IRS to setoff $544.61 against the debtor's 1977 tax liability, even though that tax liability was dischargeable in bankruptcy. The Court believes this result is in accord with the intent of Congress in preserving the right of setoff between creditor and debtor. As a result, the retention of the debtor's tax refund for the purpose of later effecting a setoff is not contemptuous, *United States v. Powers,* 28 B.R. 86 (Bankr.E.D.Pa.1983), and the IRS may proceed forthwith to apply the remainder of the debtor's tax refund for 1982 to that portion of her tax liability for 1977. IRC § 6402(a) (1982); 11 U.S.C. § 553. However, the injunction provisions of § 524(a)(2) will prevent the Internal Revenue Service from exercising any right to setoff with respect to future refunds owed to the debtor.

This Court's conclusion that a setoff is proper in this case does not purge the IRS of its contempt in violation of the injunction provisions of § 524(a)(2) for issuing a demand notice for the entire tax liability owed by the debtor for the tax year 1977. Except to the extent that the IRS was entitled to a valid setoff, the debt-

or's tax obligations for 1977 were properly dischargeable. Accordingly, an IRS demand for the entire amount or for any amount other than that to which it was entitled under § 553 is a violation of § 524 and has subjected the IRS herein to a finding of civil contempt for its actions.

In accordance with the foregoing, it is the Court's opinion that (1) the IRS should be found in civil contempt for violation of this Court's order entered January 31, 1984 to the extent it sent a past due notice to the debtor demanding payment of a discharged tax obligation for which the Court assesses $750.00 in attorney's fees to be paid by the IRS to the debtor to remedy the debtor's actual loss resulting from the noncompliance and violation of this Court's order, (2) the IRS should be permitted to exercise its right of setoff pursuant to § 553 by applying the remainder of a refund owed to the debtor for the tax year 1982 in the amount of $544.61 against the debtor's tax liability for 1977, (3) the IRS should be enjoined from commencing or continuing any action, or the employing of any process, or an act to collect, recover, or offset the debtor's pre-petition tax liability for 1977 as a personal liability of the debtor other than the setoff of the debtor's tax obligations approved herein, and (4) the debtor's request for punitive damages in the amount of $1,000,000 in addition to her actual loss should be denied.

An appropriate Order will issue.