**In the Matter of DON CONNOLLY CONSTRUCTION COMPANY, INC., Debtor.**

**Bankruptcy No. 89–3089–8B7.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 20, 1990.

Francis H. Cobb, Tampa, Fla., for debtor.

V. John Brook, Jr., Petersburg, Fla., Trustee.

Patti W. Medearis, Tampa, Fla., for trustee.

Michael P. Brundage, Tampa, Fla., for Enterprise Nat. Bank of Tampa.

## ORDER DENYING MOTION FOR RECONSIDERATION OF ORDER DENYING NOTION FOR IMMEDIATE PARTIAL PAYMENT OF SECURED CLAIM

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THE MATTER under consideration in this Chapter 7 case is a Motion for Reconsideration of Order Denying Motion for Immediate Partial Payment of Secured Claim filed by Creditor, Enterprise National Bank of Tampa (Enterprise). The Court reviewed the record, heard testimony and argument of counsel, and finds the relevant facts to be as follows:

In December 1988, Debtor, Don Connolly Construction Company, Inc., executed and delivered to Enterprise a promissory note for the amount of $400,000.00. As security for the note, Debtor executed and delivered to Enterprise a Security Agreement which gave to Enterprise a security interest in all of Debtor's accounts and general intangibles then-owned and thereafter acquired by Debtor including all proceeds, products, rents and profits of the collateral. Enterprise perfected its security interest by filing a UCC–1 Financing Statement with the Secretary of State of Florida and recording the Financing Statement in Hillsborough County in December 1988. Debtor subsequently defaulted on the note.

On May 5, 1989, Debtor filed for relief under Chapter 7 of the Bankruptcy Code. Enterprise filed a secured proof of claim for the amount of $409,818.33. After filing the petition for bankruptcy, Debtor received a check from the United States Treasury in the amount of $9,787.00 which represented the refund of an overpayment of payroll taxes [1] made by the Debtor. The check was dated June 13, 1989. Debtor immediately turned the check over to the Trustee, V. John Brooks.

Enterprise contends it is entitled to this check as partial payment of its secured claim because its perfected security interest in all of Debtor's general intangibles includes the Debtor's right to receive a tax

---

**1.** *See,* I.R.C. §§ 3101–3509 (1986). These taxes fall under the category of Employment taxes.

refund. Trustee alleges the security interest does not attach to the check since Debtor never acquired any rights to the tax refund. In addition, since Debtor received the check post-petition, it is not subject to any lien resulting from a pre-petition security interest.

The issues before the Court are 1) whether the right to receive the refund of overpaid payroll taxes constitutes a general intangible; 2) whether the right to the tax refund arose pre-petition; and 3) whether Enterprise's pre-petition security interest attached to the refund.

## DISCUSSION

■ Enterprise contends the right to receive a refund of overpaid payroll taxes is a general intangible which is subject to its perfected security interest in all of Debtor's general intangibles and proceeds thereof. Enterprise directs the Court to authority which states, "It is now well established that the right to receive a tax refund and the anticipated tax returns [sic] themselves are general intangibles." *Lazere Financial Corp. v. Palmetto Pump & Irrigation, Inc. (In the Matter of Palmetto Pump & Irrigation, Inc.)*, 81 B.R. 109, 111 (Bankr.M.D.Fla.1987); *Sterling National Bank & Trust Company of New York v. Bornstein (In re Metric Metals International, Inc.)*, 20 B.R. 633, 636 (S.D. N.Y.1981). While the Court agrees with these rulings and rationale, these cases are not directly related to the present case. These cases discuss rights to anticipated federal income, state and city tax refunds, not refunds of overpaid payroll taxes which were not anticipated by the Debtor. Therefore, the Court finds it appropriate to analyze the definition of general intangibles under the Uniform Commercial Code. In Article 9 section 106 of the Uniform Commercial Code, " 'General intangibles' means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money ..." The Official Comment to that section states, "Note that this catch-all definition does not apply to money or to types of intangibles which are specifically excluded from the coverage of the Article (Section 9–104) ..." Section 9–104 does not specifically exclude the right to receive a refund of overpaid payroll taxes as a general intangible. Therefore, the Court finds the right to receive the refund of overpaid payroll taxes constitutes a general intangible.

■ The next issue is whether Debtor's right to receive the tax refund arose pre-petition. On the outset, the Court would note if the right to the tax refund came into existence pre-petition and Enterprise perfected its security interest pre-petition, the fact Debtor received the tax refund post-petition does not alter the priority of Enterprise's lien in general intangibles as applied to the tax refund. *Palmetto Pump, supra,* 81 B.R. at 112.

■ The Tax Code and Bankruptcy case law suggest different interpretations as to when the right to the tax refund arises. Some courts have determined the right to the tax refund arises at "the end of the debtor's tax year, subject only to the debtor's filing a tax return claiming the refund within the time limitations prescribed by IRC § 6511(a) (1982)." *In re Conti,* 50 B.R. 142, 148 (Bankr.E.D.Va.1985). *See also, Palmetto Pump, supra.* On the other hand, I.R.C. § 6407 (1986) provides:

> The date on which the Secretary first authorizes the scheduling of an overassessment in respect of any internal revenue tax shall be considered as the date of allowance of refund or credit in respect of such tax.

In rejecting the *Conti* theory and expanding on I.R.C. § 6407 (1986), the Court in *Harbaugh v. United States Internal Revenue Service (In re Harbaugh),* 99 B.R. 671 (Bankr.W.D.Pa.1989) states

> Under § 6407 the Debtors had no right to their overpayment until the Secretary's delegate authorized the scheduling of the overassessment. *Philadelphia & Reading Corp. v. Beck,* 676 F.2d 1159 (7th Cir.1982). However, the IRS cannot determine the existence of an overpayment until a refund is claimed. A refund cannot be claimed until a taxpayer has been able to determine the amount of tax owed and the amount already paid.

The taxpayer cannot perform these acts without various income statements from various sources, such as employers, and financial institutions. Employers are not required to provide the requisite information to employees until January of the following year. To say that Debtors were entitled to a refund on December 31st when it was absolutely impossible for anyone to ascertain same, is to hold fast to Draconian absolutes in the face of reality. Tax consequences must follow what has actually taken place, not what might have taken place.

*Id.* at 676. The *Harbaugh* Court holds the right of the debtor to the tax refund arises when there is an official determination of a tax refund and not on the date the debtor's year ended or in the present case the date the Debtor's quarter ended.

▇▇▇ Under these facts, this Court would reject *Conti* and follow *Harbaugh.* In the case at bar, all the procedures and determinations necessary for a tax refund have taken place otherwise the check would not have been issued. Under I.R.C. § 6407 (1986), Enterprise's burden is to establish that prior to the filing of bankruptcy petition, the Secretary made its determination regarding Debtor's right to the tax

refund. Enterprise has failed to furnish this Court with any evidence establishing the date the right to the refund came into existence.[2] There is not even the basic evidence of when Debtor filed its 941 form or the deadline for filing the 941 form.[3] Without this information the Court cannot find the right to the tax refund arose pre-petition nor Enterprise's pre-petition security interest attached to the tax refund check. Therefore, the Court finds the Motion for Reconsideration of Order Denying Motion for Immediate Partial Payment of Secured Claim should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion for Reconsideration of Order Denying Motion for Immediate Partial Payment of Secured Claim is hereby denied.

DONE AND ORDERED.

2. Assuming the *Conti* theory could apply, Enterprise has not shown the Court the date Debtor's quarter ended or even the quarter the tax refund covered. All Enterprise says in its brief is "... the Debtor had a claim against the government from the date the overpayment was made. The overpayment was obviously made by the Debtor pre-petition as the Debtor's business operations had shut down before it filed bankruptcy and no payroll taxes were paid post-petition." Without specific dates or documents, Enterprise's conclusions are not so obvious to the Court especially where the overpayment may have been prior to the creation of the indebtedness to Enterprise yet acknowledged by the Secretary post-petition.

Enterprise's conclusions come from its interpretation of I.R.C. § 6621. However, I.R.C. § 6621 relates only to the determination of the rate of interest. The entitlement to interest on overpayments is discussed in I.R.C. § 6611 (1986). Enterprise states "... the Debtor's right to reimbursement for overpayment of payroll taxes arose when the overpayment was made. Indeed, under Section 6621 of the Internal Revenue Code, a taxpayer is entitled to interest on an overpayment from the date of the over-

payment commencing the date of the overpayment. *See*, Saltzman, IRS Practice and Procedure 6.03 (1981). Therefore, the Debtor had a claim against the government from the date the overpayment was made ..." Interest on overpayments will only be allowed if one, Debtor timely filed the 941 form, (I.R.C. § 6611(b)(3) (1986)) and two, it takes the Internal Revenue Service more than 45 days to refund the overpayment (I.R.C. § 6611(e) (1986)). Since Enterprise has not furnished the Court with the date Debtor filed the 941 form or the date the overpayment was made, the Court cannot determine if the right to the tax refund arose pre-petition pursuant to Enterprise's argument. Nor is there any evidence that the Internal Revenue Service took more than 45 days to refund an overpayment.

3. Employers are required to file a 941 form when reporting their payroll taxes for the quarter.

In anticipating the requirements of *Harbaugh*, the Court sent counsel for each party interrogatories as to these factors. The responses did not provide the Court with the information to resolve the issues presented herein.