**In re Judith Miriam KETELSEN, Debtor.**

**No. 99–20545.**

United States Bankruptcy Court, E.D. Tennessee.

Jan. 16, 2001.

**16.** As the *Coffman* case suggests.

**17.** Fed.R.Civ.P. 60(b).

**18.** Bankruptcy Code § 1325(a)(5).

Catherine P. Kligerman, John A. Walker, Jr., Walker & Walker, P.C., Knoxville, TN, for David Ketelsen and Keith B. Schulefand.

Charles L. Moffatt, IV, Moffatt & McArdle, Bristol, TN, for Judith M. Ketelsen.

## MEMORANDUM

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

This chapter 7 case is before the court on the debtor's motion for contempt against her former husband and his attorney based on their alleged violation of the discharge injunction. As discussed below, the motion will be denied, the court having concluded that the respondents' defensive offset attempts in the state court action instituted by the debtor did not violate the discharge injunction. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(O).

## I.

The debtor, Judith Ketelsen, commenced this chapter 7 case by the filing of a voluntary petition on March 1, 1999. The debtor's former husband, David Ketelsen, was included in the schedule of unsecured creditors for "possible obligations to former spouse in divorce proceeding" in an "unknown" amount. Mr. Ketelsen was also listed as a codebtor on debts to First USA Bank, Discover, Chase and GMAC Mortgage. On June 15, 1999, the debtor received a discharge and her no-asset case was closed on April 14, 2000.

On October 10, 2000, the debtor filed the pending motion for order of contempt which is presently before this court. In the motion, the debtor states that she filed a state court action in Erie County, New York to collect a child support arrearage owed to her by Mr. Ketelsen, who was represented in that matter by attorney Keith Schulefand. The debtor further states that in response to her child support arrearage claim, Mr. Ketelsen and his attorney alleged that she was liable to Mr. Ketelsen for payments he made on her behalf to GMAC and Consumer Credit Counseling. The debtor asserts that because any such marital obligation was discharged pursuant to 11 U.S.C. § 523(c)(1), the respondents' attempt to offset the discharged marital obligation against Mr. Ketelsen's child support obligation violated the discharge injunction of 11 U.S.C. § 524(a). Accordingly, the debtor requests a determination that Messrs. Ket-

elsen and Schulefand are in contempt of court and an award of damages including attorney's fees incurred by the debtor in both this contempt action and the state court proceeding.

Messrs. Ketelsen and Schulefand have filed a response to the debtor's motion along with a request for summary judgment supported by Mr. Ketelsen's affidavit and an affirmation from Mr. Schulefand referencing attached copies of the Ketelsens' petitions filed in the state court action along with a final order entered by that state court. The debtor has also filed an affidavit with various exhibits in opposition to the summary judgment request. Based upon these affidavits and documents, it appears that the Ketelsens obtained a divorce in the state of New York on May 29, 1997, with each being awarded custody of one child. Pursuant to the terms of Separation Agreement incorporated in the divorce decree, Mr. Ketelsen was ordered to pay child support of $150 per week, since his income was greater than that of the debtor's. With respect to the parties' marital debts, the Separation Agreement noted that the parties had worked out a five-year payment schedule with Consumer Credit Counseling Service of Buffalo, Inc., which required monthly payments of $630. The parties agreed that Mr. Ketelsen would contribute $380 a month toward this payment and the debtor $250 a month until the debts were paid in full, with each party to indemnify and hold the other harmless.

In February 1998, the debtor moved from New York to Tennessee, leaving both children with Mr. Ketelsen, and thereafter she filed for bankruptcy relief here in Tennessee on March 1, 1999. While the debtor listed Mr. Ketelsen as a creditor in her bankruptcy schedules, she failed to schedule as an asset any child support arrearage that she was owed by Mr. Ketelsen. On June 15, 1999, the same day as the discharge order was entered in her bankruptcy case, the debtor filed a petition against Mr. Ketelsen in the family court of Erie County, New York, alleging that Mr. Ketelsen had failed to make the court ordered $150 per week child support payments for the period of May 1997 through February 1998. In response, Mr. Ketelsen counterclaimed for child support after February 1998 when both children were in his custody. Furthermore, during negotiations between the parties, Mr. Ketelsen asserted that during the period of May 1997 through February 1998 when he allegedly failed to make child support payments, he "made a number of payments to Consumer Credit Counseling on Debtor's behalf and covered payments for her car loan and car insurance" and that "[b]y agreement between myself and the Debtor these payments were made in lieu of child support due to her." Mr. Ketelsen and his attorney argued that he was entitled to a credit or offset of the payments made by him against any amount of child support which he might owe the debtor.

In response to this offset argument, the debtor's bankruptcy attorney advised Mr. Ketelsen's attorney, Mr. Schulefand, by letter dated November 8, 1999, that Mr. Ketelsen's offset request was a violation of the discharge injunction because any obligation by the debtor to Mr. Ketelsen arising out of their divorce was discharged under 11 U.S.C. § 523(a)(15) and (c)(1) by Mr. Ketelsen's failure to request and obtain a determination of nondischargeability. Thereafter, on February 17, 2000, the parties entered into a consent decree acknowledging that no child support arrearage was owed by either party and requiring the debtor to commence weekly child support payments of $88 to Mr. Ketelsen as the custodial parent for both children. Almost eight months later, on October 10, 2000, the debtor filed the motion for con-

tempt against Messrs. Ketelsen and Schulefand which is presently before this court.

In their request for a summary disposition of the debtor's contempt motion, the respondents deny that they violated the discharge injunction. They maintain that the debtor's obligations to Mr. Ketelsen are nondischargeable under 11 U.S.C. § 523(a)(5) and that state courts have concurrent jurisdiction to determine § 523(a)(5) dischargeability. The respondents further contend that the bankruptcy issues raised herein were before the state court and that the consent order entered in the New York state court is res judicata as to all issues which were and could have been litigated. In support of this latter argument, the respondents note that the invoice from debtor's New York counsel for services rendered on her behalf in the state court proceeding has the following entry for November 16, 1999: "Court appearance for pre-trial conference with Judge and to meet with opposing attorney regarding Bankruptcy issue, scheduling, our positions on back support and current support and other. Court directed us to file a position paper on Bankruptcy Issue. Rescheduled matter for further proceedings."

In response to these arguments, the debtor contends that summary judgment is inappropriate because a genuine issue of material fact exists. Contrary to her former husband's assertion, the debtor denies that there was any agreement between them that he make payments on her behalf in lieu of child support. The debtor continues to argue that any obligation which she may have to her former husband for marital debts falls within paragraph (a)(15) of 11 U.S.C. § 523 rather than (a)(5), and was therefore discharged in her bankruptcy case.

## II.

Fed.R.Civ.P. 56, as incorporated by Fed. R. Bankr.P. 7056, mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion. *See Schilling v. Jackson Oil Co. (In re Transport Assoc., Inc.)*, 171 B.R. 232, 234 (Bankr.W.D.Ky.1994)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## III.

■ Although the res judicata and the § 523(a)(5) and (15) dichotomy are interesting and challenging issues, the court finds it unnecessary to address them in order to resolve the motion for contempt. The more basic question of whether the respondents' actions violated the discharge injunction is dispositive of this matter. Under 11 U.S.C. § 524(a)(2), a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or **offset** any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. [Emphasis supplied.]" Thus, to the extent that respondents' request for a credit for payments by Mr. Ketelsen is characterized as an offset, it would appear to be barred by the precise language of § 524(a)(2). However, 11 U.S.C. § 553 of provides that:

Except as otherwise provided in this section and in sections 3623 and 363 of this title, **this title does not affect any**

**right of a creditor to offset a mutual debt** owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. [Emphasis supplied.]

Based on this language, it has been recognized that once the requirements for setoff have been established, "that right of setoff is not affected by any provision of title 11, except, as noted in section 553(a) itself, sections 362 and 363." *In re Holder*, 182 B.R. 770, 776 (Bankr.M.D.Tenn.1995). Because § 553 does not except § 524 from its operation, the majority of courts considering the issue have concluded that discharge does "not prohibit the defensive use of setoff in a subsequent action by the debtor," although there is a small minority holding to the contrary, particularly the decisions of *Johnson v. Rutherford Hospital (In re Johnson)*, 13 B.R. 185 (Bankr. M.D.Tenn.1981), and *Dezarn v. First Farmers Bank of Owenton (In re Dezarn)*, 96 B.R. 93 (Bankr.E.D.Ky.1988). *See* 5 COLLIER ON BANKRUPTCY ¶ 553.08[1] (15th ed. rev.2000) (text, n. 5 and n. 6).

In *Johnson*, the court limited a creditor's right of setoff under § 553 to claims against the bankruptcy estate rather than the debtor, noting that the predecessor to § 553 in the Bankruptcy Act referred to mutual debts "between the estate of a bankrupt and a creditor." *In re Johnson*, 13 B.R. at 189. Based on this interpretation of § 553, the court found no conflict with the discharge language of § 524(a)(2) and refused to permit a creditor to offset the prepetition debt owed it by the debtor against a Truth–in–Lending action brought by the debtor postpetition after its abandonment by the trustee. *Id.* Similarly, the court in *Dezarn* found no conflict, concluding that since the obligation owed by the debtor is discharged under § 524(a), there is no debt against which the creditor can

offset under § 553. *In re Dezarn*, 96 B.R. at 95. Accordingly, the creditor bank violated the discharge injunction when it retained a certificate of deposit as an offset against the debtor's car loan that had been discharged in bankruptcy. *Id.*

The overwhelming majority of courts considering this issue, however, have rejected the *Johnson* and *Dezarn* decisions and have allowed discharged debts to be raised defensively in order to offset or reduce the creditor's liability on a prepetition obligation regardless of whether the action is instituted by the estate or the debtor. In *Slaw Constr. Corp. v. Hughes Foulkrod Constr. Co. (In re Slaw Constr. Corp.)*, 17 B.R. 744 (Bankr.E.D.Pa.1982), the court stated:

> If the court in *Johnson* were correct in its interpretation of § 553, then a debtor could prevent a creditor from effecting a setoff by waiting to file suit on a prepetition transaction until after he had filed a petition for relief. We conclude that the proper interpretation of § 553 is that it allows the setoff of mutual debts both of which arose before bankruptcy, regardless of when suit thereon is instituted. This would, thus, allow a creditor to raise a discharged debt as a defense to an action brought by the debtor, regardless of when that action is instituted, if that action is based on a claim or cause of action which arose before bankruptcy. Although this would seem to be inconsistent with the language of § 524(a)(2) which prohibits the use of a discharged debt as a setoff, § 553(a) of the Code states that the right of setoff is preserved notwithstanding any other section of the Code except for certain limited exceptions.

*Id.* at 748.

In *In re Conti*, 50 B.R. 142 (Bankr. E.D.Va.1985), the court reconciled the ap-

parent conflict between § 524(a)(2) and § 553 by concluding that § 524(a)(2)'s offset injunction was limited to attempts by a creditor to offset discharged debt against a **postpetition** obligation to the debtor, and did not affect the offset of mutual prepetition obligations permitted by § 553. *Id.* at 149 ("[Section] 524(a)(2) is not meant to extinguish the right to setoff which is preserved in § 553 of the Code."). The court first noted that it was well-settled that the automatic stay does not destroy the right to setoff itself, but merely prohibits the exercise of that right, and that courts have allowed a creditor relief from the stay in order to exercise setoff rights. The *Conti* court then found no basis for offset rights to be extinguished upon discharge.

> Nothing in the Code or in the case law would indicate that discharge would bar a creditor from exercising a right to setoff which existed at the time of filing the petition. [Citation omitted.] To hold otherwise would mean that if a creditor failed to file for relief from stay or failed to have its relief from stay granted prior to discharge, its right to setoff would be lost. In addition, to follow this line of reasoning would mean precluding a third party who stands as both debtor and creditor of the bankrupt from effecting a setoff upon demand by the trustee in bankruptcy for the balance of the debt due to the debtor, which demand may be made after the debtor has received his discharge.
>
> ... [T]here would appear to be no reason why a setoff should not be allowed [postdischarge] ... as neither the Code nor the Rules of Bankruptcy procedure provide a timetable by which setoff must be accomplished.

*Id.* Based on this analysis, the court concluded that the Internal Revenue Service did not violate the discharge injunction when it offset the debtor's tax refund, the right to which had arisen prepetition, against the debtor's discharged obligations to the IRS. *Id. See also Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1539 (10th Cir.1990) (it would "be unfair to deny a creditor the right to recover an established obligation while requiring the creditor to fully satisfy a debt to a debtor"); *Camelback Hospital, Inc. v. Buckenmaier (In re Buckenmaier)*, 127 B.R. 233 (9th Cir. BAP 1991) (court followed majority concluding that notwithstanding discharge, creditor permitted to use offset claim as a defensive weapon to debtor's lawsuit); *Wiegand v. Tahquamenon Area Credit Union (In re Wiegand)*, 199 B.R. 639, 641 (W.D.Mich.1996) (credit union did not violate discharge injunction when it offset funds in debtor's account against discharged debt; primary purpose of discharge which is to prohibit postpetition debt collection was not disserved by an offset); *Reich v. Davidson Lumber Sales, Inc.*, 154 B.R. 324, 334 (D.Utah 1993)(discharged debt may be set off upon compliance with terms and conditions of setoff provision of Bankruptcy Code notwithstanding postdischarge bar); *Krajci v. Mt. Vernon Consumer Discount Co.*, 16 B.R. 464, 466 (E.D.Pa.1981) (court permitted setoff of discharged debt against debtor's Truth–in–Lending action); *Runnels v. Internal Revenue Service (In re Runnels)*, 134 B.R. 562, 565 (Bankr.E.D.Tex.1991) (debtor's request for turnover of tax refund denied since IRS's prepetition right of setoff was not affected by debtor's discharge); *In re Morgan*, 77 B.R. 81, 82–83 (Bankr.S.D.Miss.1987)(electric company entitled to offset refund it was ordered to pay debtor against discharged debt where refund was for services provided prepetition); *Eggemeyer v. Internal Revenue Service (In re Eggemeyer)*, 75 B.R. 20, 21 (Bankr.S.D.Ill.1987) ("[D]ischarge of a debt in a bankruptcy proceeding does not affect the creditor's right to setoff, provid-

ed that the right of setoff existed at the time the bankruptcy petition was filed."); *Blake v. Handy (In re Handy)*, 41 B.R. 172, 173 (Bankr.E.D.Va.1984) (postdischarge offset of prepetition obligation permitted); *Ford v. Darracott (Matter of Ford)*, 35 B.R. 277, 280 (Bankr.N.D.Ga. 1983)("the spirit of § 524(a)(2) ... is not violated" when § 553 is utilized defensively).

■ This court finds the majority view to be the better reasoned one when the Bankruptcy Code is considered in its entirety. Section 553 clearly preserves a creditor's right to offset prepetition obligations between it and the debtor, except as provided in §§ 362 and 363. Section 362(a)(7) is the automatic stay provision pertaining to offsets while § 363 provides that the trustee's right to use property of the estate is subject to a right of setoff. *See* 11 U.S.C. §§ 362(a)(7) and 363(k). According to the legislative history to § 362(a)(7), this paragraph, like all other paragraphs of subsection (a), "does not affect the right of creditors. It simply stays its enforcement pending an orderly examination of the debtor's and creditor's rights." *Waldschmidt v. Columbia Gulf Transmission Co. (In re Fulghum Constr. Corp.)*, 23 B.R. 147, 153 (Bankr.M.D.Tenn. 1982) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 340–342 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 49–51 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5837, 6298). Because the stay is lifted upon the granting of the discharge, *see* § 362(c)(2)(C); and § 553 contains no exception for § 524(a)(2)'s injunction provision, it would appear that the "orderly examination" has been completed and that enforcement of a creditor's offset right is available upon discharge. As both the *Conti* and *Slaw Construction* courts recognized, to hold otherwise would in effect deprive creditors of their offset right upon a bankruptcy filing since debtors or trustees would simply await entry of the discharge before commencing action against the creditor.

■ This conclusion is further supported by the fact that a creditor who has a valid prepetition offset right has a secured claim "to the extent of the amount subject to setoff." *See* 11 U.S.C. § 506(a). Just as a secured creditor is free, notwithstanding discharge of the debtor's personal liability, to enforce its lien rights in the property once the stay has been lifted, a creditor with a right of offset may exercise this right postdischarge. See Samuel R. Maizel, *Setoff and Recoupment in Bankruptcy*, 753 PLI/Comm 733, 839 and 843 (1997) ("Discharge of the debtor does not eradicate in rem liability which may exist against assets, including monies" and "[t]o hold that prepetition claims may not be setoff against prepetition debts postconfirmation ignores setoff's status as a secured claim.").

The *Conti* court's interpretation that § 524(a)(2) applies only to efforts to offset discharged debts against a postpetition obligation to the debtor logically reconciles and gives effect to both the offset injunction language of § 524(a)(2) and the offset protection directive in § 553. *See In re Tandem Group, Inc.*, 61 B.R. 738, 741 (Bankr.C.D.Cal.1986) ("In construing potentially inconsistent provisions of the Bankruptcy Code, the different sections should, if possible, be interpreted in a manner that harmonizes the discrepancy."). Accordingly, it is adopted by this court.

Based on the foregoing, Mr. Ketelsen and his attorney violated the discharge injunction only if they sought to offset the debtor's discharged debts against Mr. Ketelsen's postpetition obligations to the debtor. Those are not the facts of this case. The record presented to this court clearly establish that Mr. Ketelsen sought to off-

set the debtor's prepetition debt to him against his prepetition obligation to her. The debtor filed for bankruptcy relief on March 1, 2000. In her postpetition state court action against Mr. Ketelsen, the debtor sought to collect child support for the period from May 1997 through February 1998. Mr. Ketelsen's alleged offset claim arises from payments he allegedly made on the debtor's behalf during this same time period. No violation of the discharge injunction occurred.

In light of the foregoing conclusion, it is irrelevant for purposes of this proceeding whether the parties did or did not have an agreement that Mr. Ketelsen could pay other marital obligations in lieu of child support. The question of whether the discharge injunction was violated does not depend on this factual dispute. In accordance with this memorandum opinion, an order will be entered denying the debtor's motion for contempt against Messrs. Ketelsen and Schulefand.