391 S.E.2d 623

**Tamara Leigh NICHOLS**

v.

**Carl Edwin NICHOLS**

**No. 18914.**

Supreme Court of Appeals
of West Virginia.

March 9, 1990.

Richard A. Bush, Bush & Trippel, Parkersburg, for Tamara Leigh Nichols.

Alan H. Simms, Elizabeth, David M. Whittaker, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, for Carl Edwin Nichols.

BROTHERTON, Justice:

Dr. Carl Edwin Nichols, a practicing obstetrician and gynecologist, and Tamara

---

Leigh Nichols, a registered nurse, were married on September 7, 1979. They had one child, a son, who was born on November 8, 1980. The Nichols were granted a divorce on grounds of irreconcilable differences by order of the Circuit Court of Wood County entered on October 26, 1984. The divorce order provided that Mrs. Nichols would receive $1,000 per month alimony for two years, retroactive to July 1, 1984, and $500 per month alimony for an additional two years, after which alimony would cease, unless she should remarry, in which case alimony would terminate immediately. Dr. Nichols was also ordered to pay $650 a month for child support.

The crux of the case now before this Court is a counterclaim Dr. Nichols made during the divorce proceedings. Dr. Nichols sought judgment against his wife in the amount of $71,000, which represented the default balance due on a note for a domestic corporation known as "For Kids Only, Inc.", a children's apparel store operated by Mrs. Nichols, who was its sole shareholder. "For Kids Only, Inc." was financed principally by an $84,500 loan from the Wood County Bank. Both the corporation, as maker, and Mrs. Nichols, as first endorser, failed to discharge the defaulted note when it was accelerated, and Dr. Nichols was called upon as second endorser to pay off the balance of the note indebtedness, a total of nearly $75,000, with interest, to the Wood County Bank.

Dr. Nichols' counterclaim was set for trial on November 9, 1984. However, the parties compromised the counterclaim in an Agreed Order entered on December 11, 1984. Dr. Nichols took judgment against his wife in the amount of $37,500, with interest at the rate of 10% per annum from November 9, 1984, until paid. This amount represented approximately one-half of the balance then due on the "For Kids Only, Inc." note. Dr. Nichols states that, on the advice of counsel, he did not pay alimony, but credited each unpaid alimony installment against the judgment his ex-wife owed to him.

On January 7, 1985, Mrs. Nichols filed a petition in contempt, alleging $9,250 in alimony and child support arrearages. In an answer to the contempt petition filed on February 4, 1985, Dr. Nichols admitted an arrearage but raised his statutory and equitable right to setoff as an affirmative defense. In reply, Mrs. Nichols objected to Dr. Nichols' claim that he was entitled to a setoff and argued that setoff is not a matter of absolute right in West Virginia, but is subject to the Court's discretion. Furthermore, Mrs. Nichols argued that case law from other jurisdictions supports the principle that "setoff against alimony payments is generally frowned upon." Mrs. Nichols also stated that permitting the setoff would deprive her of support and maintenance, and she suggested that any recovery upon Dr. Nichols' $37,500 judgment against her should be forestalled until she completed the period of rehabilitation envisioned by the Circuit Court of Wood County's initial award of rehabilitative alimony.

A hearing on the contempt petition was held on February 8, 1985, and the parties stipulated to arrearages in the amount of $8,000. Although the matter was submitted for decision on February 28, 1985, no further action was taken on Mrs. Nichols' original contempt petition.

On January 16, 1986, Mrs. Nichols filed a voluntary Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Ohio, Eastern Division. Among the debts in her schedule of liabilities, Mrs. Nichols listed the unsecured $37,500 debt she owed to her ex-husband. The bankruptcy court confirmed Mrs. Nichols' debtor's plan on March 12, 1986. Under the plan, Mrs. Nichols was required to pay $140.00 per month for approximately forty-three months to her unsecured creditors.

Dr. Nichols subsequently filed a proof of claim as an unsecured creditor in the amount of $37,500, plus accrued interest, for a total sum of $41,622.92. Dr. Nichols also appeared by counsel in the bankruptcy court proceedings, asking that the court abstain from deciding the setoff issue and modify the automatic stay that was in effect pursuant to 11 U.S.C. § 362(a)(1) (1982) of the Bankruptcy Reform Act of 1978 (the

Bankruptcy Code), and to permit the parties to proceed in state court on the setoff claim because (1) reciprocal debts existed between the parties; (2) said debts arose out of the divorce proceeding in the Circuit Court of Wood County, West Virginia; and (3) the issue of the setoff of the parties' reciprocal debts had been briefed to the West Virginia court, submitted for decision, and should be decided by the West Virginia court. In the alternative, Dr. Nichols asked that he be permitted to set off the balance due upon his $37,500 judgment against his entire alimony obligation to Mrs. Nichols.

The bankruptcy court refused to abstain, but instead found that it was the proper forum in which to decide the matters at issue because the issue was properly before the court, it affected property of the estate, and it determined the amount of various claims between the parties. Then, on July 8, 1986, the bankruptcy court sustained Dr. Nichols' motion for relief from the stay for the purposes of setting off the claims. Finding that "mutuality exists between the debtor and the creditor Carl Nichols," the court authorized a setoff of Dr. Nichols' $41,622.92 claim against the $18,000 in alimony that he owed Mrs. Nichols as of January 16, 1986, the date Mrs. Nichols filed her bankruptcy petition. However, the court ruled that after this setoff, the $18,500 balance Mrs. Nichols owed to Dr. Nichols would be paid through her Chapter 13 debtor's plan at ten cents on the dollar over a forty-three month period. The bankruptcy court specifically stated that this ruling "does not alter or affect Carl Nichols' current ongoing obligation to pay alimony and child support as it accrues post petition. The debtor [Mrs. Nichols] must seek relief in the Wood County, West Virginia Domestic Relations Court to enforce post-petition obligations."

On November 21, 1986, Mrs. Nichols filed an amended petition in contempt in the Circuit Court of Wood County, alleging that arrearages of $8,900 had accrued since January 16, 1986. In his amended answer and an original modification petition, Dr. Nichols again asserted his right to a setoff, stating that the equities favored his position, and, absent a setoff, he was entitled to the termination of his alimony obligation or, in the alternative, the reduction of that obligation from $500 to $50 monthly, based upon the intervening bankruptcy petition.

A year passed in which the original trial judge in this case retired. Finally, on April 20, 1988, further proceedings were held and arguments were heard on the parties' respective petitions. On April 28, 1988, Dr. Nichols' prayer for setoff was granted and his judgment was declared satisfied in full. Mrs. Nichols' amended petition in contempt and Dr. Nichols' modification petition were then both dismissed.

In an order dated July 15, 1988, the bankruptcy court granted Mrs. Nichols a discharge in bankruptcy, finding that her plan had been confirmed by the court and that all payments provided for under the plan had been completed. The order explained that one of the effects of the discharge was to discharge the debtor, Mrs. Nichols, from all debts provided for by the plan and to enjoin "the commencement, continuation or employment of any action, process or act to collect, recover or offset as a personal liability of the debtor(s) or from property of the debtor(s) any debt discharged under Title 11, United States Code, whether or not the discharge of such debt was waived."

Mrs. Nichols now appeals from the April 28, 1988, order of the Circuit Court of Wood County, and argues that the trial court erred in granting the defendant's prayer for setoff and denying the plaintiff's amended petition in contempt. Mrs. Nichols asserts that the trial court had no authority to permit setoff because it lacked jurisdiction under both federal and West Virginia law, because matters at issue were *res judicata,* and because such action effectively and completely subverted the purpose of the initial rehabilitative alimony award. This Court agrees that Dr. Nichols was not entitled to set off his judgment debt against the alimony payments accruing after Mrs. Nichols filed her bankruptcy petition. Therefore, we reverse the April 28, 1988, order of the Circuit Court of

Wood County for the reasons discussed below.

Section 362 of the Bankruptcy Code (11 U.S.C., § 362) grants a stay of all forms of debt collection proceedings against a person filing bankruptcy, stating, in pertinent part:

(a) Except as provided in subsection (b) of this section, *a petition filed under section 301, 302, or 303 of this title,* or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), *operates as a stay, applicable to all entities, of—*

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

\* \* \* \* \* \*

(6) *any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;*

(7) *the setoff of any debt owing to the debtor that arose before the commencement of the case* under this title against any claim against the debtor; (Emphasis added.)

Section 362(c)(1) states that a stay of an act against property of the estate under § 362(a) continues "until such property is no longer property of the estate" and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

As Mrs. Nichols points out, Dr. Nichols initially acknowledged the existence and the effect of the bankruptcy stay when he filed a motion seeking relief from the stay for the purpose of pursuing the pending state claim for setoff in the Circuit Court of Wood County. In its July 8, 1986, order, the bankruptcy court decided that it, and not the state court, was the appropriate forum to decide the issue and granted Dr. Nichols' request for relief from the § 362 stay "for purposes of setting off [the] claim." The bankruptcy court stated that Mrs. Nichols "must seek relief in the Wood County, West Virginia Domestic Relations Court to enforce post-petition obligations."

Mrs. Nichols subsequently filed an amended petition in the Circuit Court of Wood County, alleging that Dr. Nichols owed her $8,900 in alimony arrearages and unpaid child support which had accrued since she had filed bankruptcy. Thus, Mrs. Nichols' new claim was only for support obligations which had accrued post-petition. Section 553 of the Bankruptcy Code addresses a creditor's right to setoff in bankruptcy proceedings with respect to pre-petition debts and states, in pertinent part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title [11 USCS §§ 362 and 363], this title [11 USCS §§ 1 et seq.] does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title [11 USCS §§ 1 et seq.] against a claim of such creditor against the debtor that arose before the commencement of the case ...

This section has been interpreted to permit the setoff of mutual debts, both of which arose before bankruptcy.[1] For example, in *In Re Slaw Construction Corp.,* 17 B.R.

---

**1.** Counsel for the appellee, Dr. Nichols, cites a bankruptcy court's decision in *Matter of Ford,*

35 B.R. 277, 280 (Bankr.N.D.Ga., 1983), in which the court stated:

744, 748 (Bankr.E.D.Pa., 1982), the bankruptcy court concluded that "the proper interpretation of § 553 is that it allows the setoff of mutual debts *both of which arose before bankruptcy,* regardless of when suit thereon is instituted." (Emphasis added.) The court then stated:

> [t]his would, thus, allow a creditor to raise a discharged debt as a defense to an action brought by the debtor, regardless of when that action is instituted, if that action is based on a claim or cause of action which arose before bankruptcy. Although this would seem to be inconsistent with the language of § 524(a)(2) which prohibits the use of a discharged debt as a setoff, § 553(a) of the Code states that the right of setoff is preserved notwithstanding any other section of the Code except for certain limited exceptions.

*Id.*

In the case now before us, Mrs. Nichols' contempt petition seeking alimony is a new claim for only that alimony which has accrued post-petition. When Mrs. Nichols initially filed the bankruptcy petition on January 16, 1986, Dr. Nichols owed her $18,000 in accrued alimony. Dr. Nichols refers to the alimony award as though it were a lump sum of $36,000, but clearly it was not, as the initial order specified that alimony was to be paid at a monthly rate and would terminate if Mrs. Nichols remarried. A gross amount or lump sum of alimony is an award which is not subject to change, and Mrs. Nichols' alimony in this case cannot be properly characterized as such.

The bankruptcy court permitted a setoff only of the alimony that had accrued as of the date of the filing of the bankruptcy petition, while specifically stating that this setoff did not "alter or affect Carl Nichols' ongoing obligation to pay alimony or child support as it accrues post-petition." We conclude that Dr. Nichols' $37,500 judgment, a claim which was within the dis-

charge, cannot be asserted once again as a setoff or defense to Mrs. Nichols' claim for alimony and child support arrearages which accrued *after* she filed her bankruptcy petition.

Mrs. Nichols was granted a discharge of her pre-petition debts, including her debt to Dr. Nichols. He cannot use a debt discharged in bankruptcy to offset his own debt to Mrs. Nichols which arose after she filed the bankruptcy petition. Because receipt of alimony was contingent on Mrs. Nichols not remarrying, it did not constitute a debt for a fixed, liquidated amount arising before the bankruptcy petition. Rather than a fixed lump sum, the alimony award was an ongoing, contingent obligation arising monthly. Because Dr. Nichols' support obligation survives the bankruptcy proceedings, he cannot raise his pre-petition claim against Mrs. Nichols as a defense to her subsequent post-petition claim for support arrearages.

For the foregoing reasons, the April 28, 1988, order granting Dr. Nichols the right to setoff is reversed, and this matter is remanded to the Circuit Court of Wood County for proceedings consistent with this opinion.

Reversed and remanded.

---

debts previously discharged ... prohibit the creditor from engaging in collection efforts or seeking a judgment on those debts against the debtors in any post discharge action, but where suit is brought by the debtors against the creditor, pre-petition claims of the creditor may be used to defend himself in the suit.

Counsel argues that "[t]his is precisely what Dr. Nichols is doing in this case," but ignores the critical distinction: *Ford* involved the attempt to offset mutual pre-petition debts. In this case, Dr. Nichols is asserting his pre-petition claim as a defense against Mrs. Nichols' post-petition claim.